Judge Makshall
delivered the opinion of the Court.
This is an •indictment'in the City Court of Lexington, for keeping a disorderly house in that city, “ to ^he great damage and common nuisance of the citizens of this Commonwealth,” &'c. The gravamen and sub *3 stance of the charge, is that the defendant, for his own lacre and gain, did, on a day designated, and at divers other times, cause and procure certain evil disposed persons, who were slaves, not belonging to him, to frequent and come together in his house, and did unlawfully permit them, at divers times, at night and by day, to be and remain in the said house, drinking, tippling, and buying of him ardent spirits — whiskey, wine, brandy, &c.
A house in which» slaves are permitted from time to time to assem ble and remain, drinking, tippling- and buying ardent spirits, is a disorderly house (6B. Monroe 22) and a nuisance : and that the owners of theslaves permitted the sale to them rviil not exonerate thekeeperot the house from the penalty of tho iaw.
When the indicf.-that the defend-slaves unlawful ]y lo be and Te* main about his house, buying, tippling, ^drinking, it is sufii-, cient.
*3 The 65th section of the act of 1842, to reduce into one the acts and amendatory acts incorporating the city of Lexington: (Session Acts, 260,) gives to the-City Court of Lexington, concurrent jurisdiction with-the Circuit Court of Fayette, in prosecutions by indictment or presentment, for breaches of the peace, nuisances, and violations of the statutes against gaming, occurring in the city of Lexington; and. authorizes a grand jury in that Court to inquire into such offences. A subsequent act of 1845 : (Session Acts, 196,) gives to the City Court of Lexington exclusive jurisdiction of all pleas of the Commonwealth, arising within that city, except cases of felony.
And according to the principles laid down in the case of Smith vs The Commonwealth: (6 B. Monroe, 22,) and to which we still adhere, a house in which slaves are permitted from time to time to assemble and remain, drinking, tippling, and buying ardent spirits, is a disorderly house, and a common nuisance. And we are satisfied that it should be so considered, whether the liquor is sold or given to the slaves, with or without the permission of their owner. For, although the owner of a slave may authorize the gift or sale of liquor to his slave, on one or more occasions, he cannot legalize the act of permitting slaves, on divers occasions, and habitually, to assemble and remain in the house of another — drinking, tippling, and buying ardent spirits from him.
But this indictment charges that the defendant unlawfully caused and procured the slaves to frequent and come together, and unlawfully permitted them tobe *4 and remain in bis house — drinking, tippling, and buying ardent spirits — which sufficiently negatives any implication of a permission from their owners, if such negation were necessary.
The City Court of Lexington have the same power to suppress nuisances and in the same mode.as the Circuit Court had before the change of jurisdiction to the Ctly Court, unless the city had passed an ordinance changing the punishment.
We are of opinion, therefore, that the indictment contains facts enough to constitute a nuisance, and an offence of which the City Court of Lexington has undoubted jurisdiction. And, although by the 35th section of the act just above referred to: (Session Acts of 1842, 255,) the Mayor and Councilmen of the city have power “to suppress, by ordinances, with suitable penalties, all tippling houses, bawdy houses, disorderly houses, &c., &c.; still, as it is not shown, and we have not discovered that the city authorities have passed any ordinance for the suppression of a nuisance of the character of that described in this indictment, and as the of-fence charged is to be regarded as a common law of-fence. punishable by fine or imprisonment, at the discretion of a jury; the form of the indictment, the mode of proceeding, and the power of the Court and jury, are the same in the City Court, as they would have been in the Circuit Court of Fayette, if the jurisdiction had not been changed. The only necessary difference is in the style of the Court, and in the substitution of the city of Lexington for the county of Fayette. Whether, if the city authorities had passed an ordinance for the suppression of nuisances, of the sort described in this indictment, by such penalties as they are authorized to inflict, the common law punishment would be necessarily superseded, is a question which does not arise in the absence of such ordinance. We remark, however, that the fifth section of the act of 1840: (3 Siat. Law, 571,) though it declares that the authorized ordinances of city authorities, shall be enforced, in all respects, as if no legislative act had been passed on the. same subject, does not expressly give to such ordinance the effect of repealing or superseding the legislative act, and makes no reference to the common law, where there has been no legislation on the particular subject. Whether it intended to impart to the órdiga»'''" *5 overruling consequence, is a serious question, which we need not now consider.
No prosecutor necessary to an indictment for a nuisance in the City Court of Lexington.
The selling of spirituous ii-qnor to slaves is not unlawful, unless done without the permission of the owners or masters, hut to assemble frequently in the house and drink tipple &c., would create a nuisance.
It follows from the views which have been presented, that the demurrer to the indictment was properly overruled. The same views also, meet the objections urged on the motion in arrest of judgment, except that which supposes that a prosecutor was necessary, for which we know of no authority.
With regard to the sufficiency of the evidence to support the indictment for a nuisance, and to sustain the verdict against the defendant, assessing a fine of $100, it is not necessary that we should express an opinion, because the verdict was found under an, erroneous instruction of the Court, which entitled the defendant to a new trial. The instruction declares in effect that the offence as a nuisance is complete if the defendant was in the habit of selling spirituous liquors to slaves during the time covered by the indictment, that is, within twelve months before it was found by the grand jury.
But the selling of liquor to slaves is not unlawful, unless it be done without the permission of their owners; and the habitual selling of liquor to slaves with the permission of their owners or masters, does not of itself constitute a nuisance, or any offence in the vendor, because each act is authorized by law.
If the indictment had merely charged the selling of spirits to slaves on a certain day and at divers other times, it must have alleged that'it was done without the permission of their owners, and the jury must have believed from the evidence that it was so done, to justify a verdict against the defendant.
It has not been heretofore decided that this offence though'repeated every day would make the house in which it was committed a disorderly house and a common nuisance, unless the slaves were habitually allowed to assemble in the house and buy liquors, and drink and tipple.
But conceding as we are inclined to do, that the frequent and habitual selling of liquor to slaves without *6 the permission of their owners, and in a house used or kept for the purpose, would constitute the offence of keeping a disorderly house and be a common- nuisance, we are of opinion that all of these facts must concur, and they must be frequent and habitual, and not merely occasional or rare in order to constitute the nuisance.
If the offence be not so repeated as to constitute a nuisance, then each offence of unlawfully selling might be punished separately.
Shy Sf Beck for plaintiff; Harlan, Attorney General, for Commonwealth.
If the unlawful act be occasional only, each offence is properly punishable by inflicting the prescribed penalty for each. If it be habitual, and continued it becomes a nuisance by the principles of the common law, and the offender may be subjected to such fine'or imprisonment as in the opinion of the jury will suppress the nuisance.
The instruction given is inconsistent with these views in confuting the jury to the question whether the defendant habitually sold liquor to slaves, and excluding the enquiry whether it was habitually done without the permission of their owners or masters.. As the judgment must be reversed for this error, we need only remark with regard to the refusal of -the Court to compel direct answers from a witness deposing for the Commonwealth, that such matters must be very much within the discretion of the Judge who presides at the trial, and- we cannot say that the discretion was abused in this case, or that the defendant was subjected to any injury by the failure of the Court to interpose.
But for the error in the instruction, the judgment is reversed, and the cause remanded for a new trial in conformity with this opinion.