THE STATE OF KANSAS, *ex rel. A. H. Vance, as County Attorney of Shawnee County*, v. LESTER M. CRAWFORD AND G. N. BOUTELL.

ILLEGAL LIQUOR SALOON, *Not Shut up and Abated by a Court of Equity*. A drinking saloon in which intoxicating liquors are sold repeatedly, continuously and persistently, in utter violation and defiance of the constitution and statutes of the state, and are sold to be drunk on the premises as a beverage, is a public nuisance; and this is so, not merely because of the express provisions of the statute declaring such places to be nuisances, (§ 13 of the prohibitory act of 1881,) but it is also so from the necessary implications of the statute, and by the indirect force of the statutes, which make the keeping of the saloon, and the consummation of each sale of intoxicating liquors, criminal offenses; and it is so because of the repeated, continuous and persistent violation of the statutes. Such a nuisance may be "shut up and abated" under the provisions of said § 13 of the prohibitory act of 1881; but it cannot ordinarily be perpetually enjoined by a court of equity; and this want of power in a court of equity is not because of the fact that the keeping of the saloon is a criminal offense, and involves the commission of many criminal offenses, but because the statute (said § 13) affords another complete and adequate remedy.

*Error from Shawnee District Court.*

ACTION brought by *The State of Kansas*, on the relation of A. H. Vance, as county attorney of Shawnee county, against *Lester M. Crawford* and *G. N. Boutell*, to perpetually shut up and abate the further continuance of a certain illegal liquor saloon. The petition, filed May 2, 1882, alleges that —

"The said Lester M. Crawford is the owner in fee of certain premises situate in the city of Topeka, in the county of Shawnee, and state of Kansas, to wit: Number one hundred and ninety-four and one hundred and ninety-six (194 and 196), on Kansas avenue, in said city, known as 'Crawford's Opera House,' and leases or rents the south room of the first story thereof, to wit, number one hundred and ninety-six, on Kansas avenue as aforesaid, to the said G. N. Boutell, and permits the said G. N. Boutell, and has for several months last past, permitted said G. N. Boutell, to occupy and use said rooms as hereinafter set forth.

"That said room is, and for several months last past has been, kept by the said G. N. Boutell as a common saloon and as a place for the sale and keeping for sale of beer, ale, wines, whisky, brandy, and other intoxicating liquors, to be there at a common bar used and drunk as beverages and not for medical, mechanical, or scientific purposes; and the said G. N. Boutell is at said place constantly engaged in the sale of said liquors as aforesaid, and keeps large quantities of said liquors constantly on hand at said place for the purpose of selling the same over his said bar, there to be used and drank as beverages; that said place is for said purpose kept constantly open from shortly after daylight in the morning until about midnight at night; and the sale and keeping for sale of said liquors is the principal business done and carried on at said place.

"That neither of said defendants is a druggist, and no permit has ever been granted or issued by the probate judge of said Shawnee county to said defendants, or to either of them, authorizing them, or either of them, to sell or barter said liquor; nor have said defendants, nor has either of them, any authority whatever to carry on said business or sell said liquors. On the contrary, said defendant Boutell makes no pretense of having any such authority, but purposely and contemptuously carries on said business at said place in open

and defiant violation of law, and said place is and purports to be a common saloon and' tippling-house—of all of which things the said Lester M. Crawford has full knowledge, and leased said premises to the said G. N. Boutell for the express purpose of keeping therein a common saloon and tippling-house as before alleged, which said lease was made, and said G. N. Boutell first occupied said place as aforesaid, since the first day of May, 1881.

"That the said G. N. Boutell will continue to occupy said place and to keep and use the same as a place for the sale of intoxicating liquors as aforesaid, and as a common saloon and tippling-house indefinitely in the future, and the said Lester M. Crawford will continue to permit such use of said place, unless restrained and forbidden by the injunction and decree of this honorable court; that said place is a common nuisance of great injury to the public, which injury is irreparable and cannot be compensated in damages.

"Wherefore, the said A. H. Vance, as county attorney of said Shawnee county, for and on behalf of the state of Kansas, prays—

"1. That said premises, to wit, the first story of number one hundred and ninety-six, Kansas avenue, in the city of Topeka, may be adjudged to be a common nuisance, and that an order may issue directing the sheriff or other proper officer to shut up and abate said place.

"2. That said defendants may be perpetually enjoined from using or permitting to be used the said premises as a place where intoxicating liquors are sold or kept for sale otherwise than by authority of a druggist's permit from the probate judge of said county.

"3. That in the meantime the said defendants may be enjoined until the further order of the court, from keeping open or permitting to be open the said first story of said one hundred and ninety-six, Kansas avenue, and from selling, bartering or giving away, and from keeping for sale, barter or use, at, in or about said premises, any malt, vinous, spirituous, fermented or other intoxicating liquors, and from permitting such liquors to be sold, bartered or given away, or to be kept for sale, barter or use, at, in or about said premises.

"4. And said A. H. Vance, as county attorney of said Shawnee county, for and on behalf of the state of Kansas, prays that such other and further relief may be given as may be warranted in equity or at law, and the exigencies of the case may require."

When the foregoing petition was filed, the plaintiff moved the court for an order granting a temporary injunction as prayed for, and afterward, on the hearing of this application, produced evidence in writing, by depositions and affidavits, to support its motion. June 3, 1882, the court overruled the motion, and refused the temporary injunction, which ruling and refusal the plaintiff brings here for review.

*A. H. Vance*, county attorney, and *G. C. Clemens*, special counsel, for The State.

*Joseph G. Waters*, for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This action was originally instituted in the district court of Shawnee county, by the county attorney of such county, in the name of the state, for the purpose of perpetually enjoining the further continuance of an illegal liquor saloon, in which intoxicating liquors were illegally, continuously, and persistently sold, to be drank on the premises as a beverage. G. N. Boutell, the keeper of the saloon, and Lester M. Crawford, the owner of the building in which the saloon was kept, were made parties defendant. Other kinds of business, not illegal, were also carried on in the same building, and in the same room; but there was no intention or desire on the part of the county attorney to interfere with or disturb any of these other kinds of business.

It must be admitted that this is a novel proceeding — so novel as to startle old and experienced practitioners; and yet, if it were ascertained, after a careful examination of all its elements, to be founded in reason and justice, and to come within the acknowledged principles of long-established equity jurisprudence, it should not be dismissed unceremoniously, or denied a respectful hearing, simply because of its unquestioned and admitted novelty. Valid and legitimate remedies often lie dormant for years, simply because no fair opportunity is presented to put them in operation. There has probably never been a prosecution in this state for putting a

dead animal in a well, or for allowing a candle factory to become unclean; and yet there can be no question as to the criminality of such acts, or the remedy for their suppression. (Comp. Laws of 1879, p. 374, §§ 316, 318.)

Probably a sufficient reason why this proceeding is novel is, that no fair opportunity has ever before existed for putting such a proceeding into operation. No such state of affairs as now exists has ever before existed in Kansas. Such vast numbers of illegal drinking saloons as now exist were never before known in Kansas. During the last year, in several of the great centers of population in this state, numerous illegal drinking saloons have been openly and publicly operated, in utter defiance of the constitution and the statutes of the state; and counsel for plaintiff say in substance in their brief, that there is no other adequate remedy than this for their suppression. Under the old laws, as they existed prior to the passage of the present prohibitory law, in communities where public sentiment was sufficiently strong (and that was in a very large proportion of the state), no drinking saloons of any kind, legal or illegal, were allowed to exist; and in communities where public sentiment was not sufficiently strong to suppress and prohibit all drinking saloons, a few saloons were licensed and regulated by law, and no illegal saloons were tolerated. Hence, under the old laws, as they existed prior to the passage of the present prohibitory law, there was no fair opportunity for courts of equity to reach out to enjoin or suppress illegal drinking saloons. It is perhaps true that prior to the passage of the present prohibitory law, and under the old laws, intoxicating liquors were occasionally sold in violation of law; and it is perhaps also true that upon the frontiers, where no laws were rigidly enforced, a few illegal drinking saloons obtained a temporary but precarious existence; but these apparent exceptions to the general proposition that no fair opportunity was presented to courts of equity under the old laws to suppress illegal drinking saloons, do not in any essential particular constitute any real exception to the truth of such general proposition; for courts of equity never

reach out to suppress or enjoin things which have already occurred, and do not, as a rule, reach out to suppress or enjoin things which necessarily can have only a temporary existence; and on the frontiers, no laws of any kind have ever been rigidly enforced.

It has been suggested, however, that this proceeding is novel, simply for the reason that no lawyer of any eminence, or otherwise, has ever before supposed that courts of equity had jurisdiction, under similar circumstances, to suppress or restrain illegal drinking saloons, by the mere remedy of injunction. We shall not stop to consider this suggestion now, but will consider the same further on in this opinion, when we come to consider the question whether or not any other plain and adequate remedy exists for the suppression of illegal drinking saloons.

We shall now proceed to consider the question whether this proceeding is founded upon any well-recognized principles of equity jurisprudence. That courts of equity will sometimes restrain nuisances, we suppose all will admit; but the further questions arise: Are illegal drinking saloons nuisances? And if they are, then are they the kind of nuisances which courts of equity will under any circumstances take jurisdiction of and enjoin? And if they are the kind of nuisances which courts of equity will under any circumstances take jurisdiction of and enjoin, then what are the circumstances? Will courts of equity take jurisdiction of and enjoin ordinary illegal drinking saloons, notwithstanding the various remedies given by statute for their suppression and extirpation, and for the punishment of all offenders who may have any connection with them, and where no peculiar circumstances exist, or surround the particular case, which might render the statutory remedies abortive or inadequate?

That illegal drinking saloons are nuisances, we suppose all will admit, for our statute laws, almost ever since Kansas has had any existence, have declared them to be such. As far back as February, 1859, the legislature of the then territory

of Kansas enacted that they were nuisances. Section 7 of the dramshop act of February 11, 1859, reads as follows:

"All places where intoxicating liquors are sold, in violation of this act, shall be taken, held and declared to be common nuisances; and all rooms, taverns, eating-houses, bazaars, restaurants, groceries, coffee-houses, cellars, or other places of public resort, where intoxicating liquors are sold in violation of this act, shall be shut up and abated as public nuisances." (Laws of Kansas of 1859, p. 555.)

This section of the statute remained the law until 1868, when it was reënacted *verbatim,* and continued the law down to the passage of the prohibitory law of 1881, when it was substantially reënacted, though in different language. It now reads as follows:

"All places where intoxicating liquors are manufactured, sold, bartered or given away in violation of any of the provisions of this act, or where intoxicating liquors are kept for sale, barter or use in violation of this act, are hereby declared to be common nuisances; and upon the judgment of any court having jurisdiction, finding such place to be a nuisance under this section, the sheriff, his deputy, or under-sheriff, or any constable of the proper county, or marshal of any city where the same is located, shall be directed to shut up and abate such place, and the owner or keeper thereof shall, upon conviction, be adjudged guilty of maintaining a common nuisance, and shall be punished by a fine not less than one hundred dollars nor more than five. hundred dollars, or by imprisonment in the county jail not less than sixty days nor more than ninety days, or by both such fine and imprisonment." (Laws of 1881, p. 241, § 13.)

But aside from the express terms of the statutes declaring illegal drinking saloons to be nuisances, are they not nuisances from the necessary implications of the statutes? It may be true, that aside from the express terms of the statutes, many places where intoxicating liquors are sometimes illegally sold, but sold only occasionally, or incidentally to some other business, as in drug stores, for instance, and many places even where they are *so* sold, with the unquestioned understanding that they are to be drank on the premises where sold, are not

necessarily nuisances. But such places are not the kind of places which we are now considering. The places which we are now considering are illegal drinking saloons, where intoxicating liquors are sold, not only illegally and not merely occasionally or incidentally, but are sold openly, publicly, repeatedly, continuously, persistently, and in direct defiance of the constitution and statutes of the state. This we think makes them nuisances by the necessary implications of the statutes, and by the necessary but indirect force of the statutes. The repeated, continuous and persistent violations of the statutes, are what makes them nuisances, independent of the express terms of the statute declaring them to be such. Indeed, we would think that every place where a public statute is openly, publicly, repeatedly, continuously, persistently and intentionally violated, is a public nuisance: *Smith v. The Commonwealth*, 6 B. Mon. 23; *Wilson v. The Commonwealth*, 12 B. Mon. 3, 6; *Meyer v. The State*, 42 N. J. Law (13 Vroom.), 145, 157, 158, and authorities there cited; *The State v. Ellar*, 1 Dev. (N. C. Law), 267; *The State v. Paul*, 5 R. I. 192, 193; *The State v. Fagan*, 22 La. An. 246, 247; *Attorney General v. Rld. Cos.*, 35 Wis. 425; *The Commonwealth v. E. & N. E. Rld. Co.*, 27 Pa. St. 339; *The People v. Third Ave. Rld. Co.*, 45 Barb. 63; *The Queen v. Foxby*, 6 Modern, 213; *The King v. Greggory*, 5 Barn. & Ad. 555; *Attorney General v. Cockermouth Local Board*, 18 Law Reports, Equity Cases, 172, 176, 179; *The United States v. Prout*, 1 Cranch C. C. 203; *The United States v. Coulter*, id. 203; *The United States v. Lindsay*, id. 245.

Probably, even independent of the statutes and of the constitution, all saloons where intoxicating liquors are sold to be drank on the premises as a beverage ought to be considered as nuisances. Under the present laws, they must be so considered; and under all laws, they probably ought to be so considered. Though where they are legalized, the courts cannot so declare. Probably no greater source of crime and sorrow has ever existed than social drinking saloons. Social drinking is the evil of evils. It has probably caused

more drunkenness and has made more drunkards than all other causes combined; and drunkenness is a pernicious source of all kinds of crime and sorrow. It is a Pandora's box, sending forth innumerable ills and woes, shame and disgrace, indigence, poverty, and want; social happiness destroyed; domestic broils and bickerings engendered; social ties sundered; homes made desolate; families scattered; heart-rending partings; sin, crime, and untold sorrows; not even hope left, but everything lost; an everlasting farewell to all true happiness and to all the nobler aspirations rightfully belonging to every true and virtuous human being. If all drinking saloons and all social drinking establishments were utterly overthrown and destroyed, all sales and uses of intoxicating liquors at other places might probably be left comparatively free, with but little danger to the general welfare of society. If these views with respect to the natural and ordinary consequences of drinking saloons are correct, then there are certainly very strong reasons for considering all drinking saloons as public nuisances. But of course, courts of justice can declare only such saloons nuisances as are illegal.

But the question still remains: Are illegal drinking saloons the kind of nuisances which courts of equity will enjoin? Perhaps it would be proper here to state, before proceeding further, that courts of equity never attempt to enjoin past occurrences, or already consummated wrongs; but only such crimes and wrongs as may be fairly expected to occur in the future unless enjoined. Neither do courts of equity attempt to enjoin all anticipated crimes or wrongs, but only such as would be likely to be permanent in their character, existence, or effects; such only as would be materially and peculiarly injurious if not enjoined; and such only for which no other adequate remedy is given. For these reasons, courts of equity have seldom, if ever, attempted to enjoin the anticipated commission of single crimes or single public wrongs; and have seldom, if ever, attempted to enjoin even the anticipated commission of aggregated crimes or aggregated public wrongs, unless these aggregated crimes

or wrongs amounted in the aggregate to a nuisance. But courts of equity will not even enjoin all nuisances. Generally, they will enjoin only such nuisances as appear to be permanent in their character or effects, or such as are likely to be of long duration in the future, either in existence or effects; and such only as would produce irreparable injury to the party asking for the injunction unless enjoined; and such for which no other adequate remedy exists. And the public can obtain an injunction to restrain a nuisance only when the nuisance is injurious to the public.

Two principal objections are urged against enjoining the present liquor saloon: (1) The keeping of the same is a criminal offense; (2) another plain and adequate remedy is afforded by the statute.

As to the first of the above-mentioned objections, we would say, that while it is unquestionably true that the keeping of the saloon in question is a criminal offense, and its operation involves the commission of many criminal offenses, yet we cannot think that these facts can possibly take away any of the jurisdiction which courts of equity might otherwise exercise. It would seem to us that all sound reason and the great weight of authority is against the objection. ( 2 Daniell's Chancery, ch. 36, § 1, p. 1636; 2 Story's Equity Jurisprudence, § 923, *et seq.;* Adams's Equity, p. 427 [211]; *The People v. City of St. Louis,* 10 Ill. 351, 367; *Minke v. Hopeman,* 87 Ill. 450, 453, 454; *Attorney General v. N. J. Rld. Co.,* 2 Green's Chancery [N. J.], 136, 140; *Mayor of Columbus v. Jaques,* 30 Ga. 506, 512, 513; *The State v. Mayor of Mobile,* 5 Port. [Ala.] 280, 307, *et seq.; Citizens of Raleigh v. Hunter,* 1 Dev. Equity [N. C.], 12; *District Attorney v. L. & B. Rld. Co.,* 16 Gray [Mass.], 245; *Hamilton v. Whitridge,* 11 Md. 129; *Sparhawk v. U. P. Rly. Co.,* 54 Pa. St. 401, 404, *et. seq.; Attorney General v. C. & N. W. Rly. Co.,* 35 Wis. 425, 449, 450.)

On the other side of this question, see the following cases: *Sparhawk v. U. P. Rly. Co.,* 54 Pa. St. 401; *Att'y Gen. v. Utica Ins. Co.,* 2 Johns. Ch. 371, 375, *et seq.*

In the case last cited, Chancellor Kent seems to express an opinion, among others, that courts of equity do not have jurisdiction to restrain the commission of nuisances or other acts which are at the same time criminal offenses. Now with all due deference to the vast learning and the eminent ability of the great chancellor, and with all proper veneration for his memory and his name, we cannot follow this decision to its full and entire extent; for, unquestionably, the great weight of authority as well as of reason, is against the doctrine seemingly enunciated therein. We think that courts of equity certainly have jurisdiction to enjoin public nuisances, although such nuisances and all their constituent facts may at the same time be public offenses. Indeed, the fact that public nuisances, with all their constituent facts, are public offenses, is a very strong reason why courts of equity should take jurisdiction of such nuisances, and suppress and enjoin them; provided, of course, that no other adequate remedy exists. Indeed, at common law, all public nuisances were public offenses; and if the proposition is sound that no nuisances can be enjoined, except such as are not public offenses, then, where the common law has full force, no public nuisance could ever be enjoined. This we think will not be insisted upon in its entirety, even by the defendants in error. A single offense, or several isolated offenses, may not constitute a nuisance, and may not, for any reason, be enjoined or enjoinable; but when the offense is repeated continuously and persistently, without any immediate prospect of a final termination, the aggregate of such offenses will finally become, and will constitute, a public nuisance, which may be enjoined by the public, unless some other adequate remedy is given for its complete suppression and extirpation.

The next question to be considered is, whether any other adequate remedy than injunction exists for the suppression of such nuisances as illegal drinking saloons. The statutes of Kansas make all sales of intoxicating liquors, except for medical, scientific and mechanical purposes, criminal offenses; and even sales of intoxicating liquors for medical, scientific and

mechanical purposes are criminal offenses, unless such sales are made by the original manufacturers or by druggists; and they are even then criminal offenses, unless the original manufacturers or druggists have first obtained permits therefor from the probate judge; and even then manufacturers and druggists are very much restricted in their sales. Druggists can sell only upon affidavits or prescriptions, showing for what purpose the liquors are to be used. (Laws of 1881, p. 235, *et seq.*) Section 13 of the prohibitory act declares that all places where intoxicating liquors are manufactured or sold or kept for sale, in violation of law, are common nuisances; and provides that the owner or keeper of any one of such places shall be considered guilty of a criminal offense, and be liable to fine and imprisonment. It may be conceded thus far the statutes do not furnish any adequate remedy for the suppression of illegal drinking saloons, for they provide only for punishing offenses after they have been committed, and do not provide any *direct* means for preventing future or anticipated offenses, as an injunction issued in such a case would necessarily do. Such a remedy — that is, punishment to be inflicted upon wrong-doers after they have committed the offenses — is often held to be a complete, adequate and sufficient remedy; but sometimes it is held not be a sufficient remedy. But said § 13 also makes further provisions. It also provides with reference to every place where intoxicating liquors are manufactured or sold or kept for sale in violation of law, that "upon the judgment of any court having jurisdiction, finding such place to be a nuisance under this section, the sheriff, deputy, or under-sheriff, or the constable of the proper county, or marshal of any city where the same is located, shall be directed to shut up and abate such place." Now is not this a plain and adequate remedy for the prevention of all anticipated violations of the law in keeping an illegal drinking saloon? A saloon, after it has been "shut up and abated," certainly has as little power to do harm as a saloon which has been enjoined. Besides, is not the remedy under the statute for the suppression of the illegal traffic in intoxicating liquors

47 — 28 KAS.

a much more extensive and comprehensive remedy than even injunction? Injunction, as we have before stated, does not attempt to restrain the commission of, or to interfere with past offenses or past wrongs, nor even to restrain the commission of, or to interfere with all anticipated offenses or anticipated wrongs. There are many illegal sales of intoxicating liquors, as we have before stated, which it will not attempt to restrain. There are even many nuisances which it will not attempt to restrain; but under § 13 we have a remedy that will prevent not only every anticipated illegal sale of intoxicating liquors, whether such liquors are kept for sale in a saloon or in a drug store or *elsewhere*, and whether they are sold openly, publicly, repeatedly, continuously or persistently, or not; or are sold only once, or occasionally, with long intervals of time between sales, and as privately and secretly as the nature of the case will permit; but we also have a remedy that will prevent every illegal keeping of such liquors for sale, and every illegal manufacture thereof; and the guilty party may be punished by fine and imprisonment. Now this is certainly much more than will be done under any circumstances, by the mere remedy of injunction. Mr. High, in his work on Injunctions, uses the following language:

"§ 745. Notwithstanding the well-established jurisdiction of equity to enjoin the erection of nuisances, and the fact that in some cases the relief is even extended to the abatement of the nuisance, the existence of a legal remedy will be held sufficient ground for withholding an injunction. Thus, when a full and complete legal remedy is provided by a statute authorizing courts of law to give judgment of abatement in actions for damages incurred by private nuisances, a court of equity may refuse to entertain an action to enjoin and abate such a nuisance. So when a summary remedy is provided by statute for the abatement by the municipal authorities of cities of all nuisances, public and private, a court of equity may properly refuse to interfere by injunction, when no obstacle is shown in the way of proceedings at law. And it may be said generally, that the aid of an injunction will not be extended for the prevention of a nuisance when it does not satisfactorily appear that the person aggrieved is without adequate remedy at law." (1 High on Injunctions, § 745.)

It will be seen from the above quotation from Mr. High, that he thinks that abatement is a more extensive remedy than injunction. After speaking of the jurisdiction of courts of equity to enjoin, he says "that in some cases the relief is even *extended* to the abatement of the nuisance." See also in this connection the following authorities: Wood on Nuisances, § 780; *Remington v. Foster,* 42 Wis. 608; *Powell v. Foster,* 59 Ga. 790; *Parker v. W. L. C. & W. Co.,* 67 U. S. (2 Black) 545; *Att'y Gen. v. Utica Ins. Co.,* 2 Johns. Ch. 371, 378,· *et seq.*

It must be remembered that the statute does not give the remedy of *injunction* to *restrain* illegal drinking saloons or to *restrain* public nuisances of any kind. The jurisdiction to grant injunctions in such cases is simply assumed by courts of equity *where no other adequate remedy exists.* Hence where the legislature, after making the thing illegal, and after creating it a nuisance, then gives some other adequate remedy therefor, courts of equity will not assume such jurisdiction, and will not furnish to litigants the extraordinary remedy of injunction.

The following suggestions were made by the court below in delivering the opinion in this case. These suggestions have reference principally to the proper construction or interpretation to be given to said section 13. The suggestions are as follows:

"This is not a new statute. In 1859 the legislature declared that all places where intoxicating liquors are sold in violation of law shall be taken, held and declared to be common nuisances, and shall be shut up and abated as public nuisances. This provision has been on the statute book for twenty-three years. During all that time an earnest warfare has been carried on against the illegal sale of intoxicating liquor. It is hardly complimentary to members of the bar who have been engaged earnestly in that contest, that they failed to perceive that under that statute they could apply to a court of chancery for a remedy for this great and acknowledged evil. . . .

"The safest way to construe a law is to assume that the legislature knew what it was doing when it enacted it. When

it declared that the keeping of a place where intoxicating liquors are sold in violation of law should be regarded as a common nuisance, and provided that upon the conviction of the keeper, the executive officer of the court should be directed to shut up and abate the place, it seems as if it provided for an efficient, prompt and exclusive method, not only to punish the offender, but to prevent the repetition of the offense by the same person, in the same locality. Similar provisions exist in the statutes of many other states, and yet this is the first instance in which an injunction has been applied for under such a law. Under some other penal statutes application has been made, but it is believed that it has been uniformly denied. If there is an exception, it is believed to have been in cases where public corporations — the creatures of the legislature — have exceeded the powers granted to them.

"It seems to be the theory of the law that when a full and legal remedy is provided by statute, authorizing judgment of abatement in courts of law, no injunction will be granted."

With reference to the suggestion that this is the first time that an injunction has ever been applied for, for the purpose of perpetually enjoining an illegal drinking saloon, and that the application should therefore be looked upon with disfavor, we think it may be answered, so far as this state is concerned, as heretofore suggested, that up to the time of the passage of the prohibitory law in 1881, illegal drinking saloons were extremely rare in Kansas; and that therefore there was but little opportunity in this state to make such an application. Perhaps, however, a few illegal drinking saloons may have existed prior to the passage of such law; and undoubtedly a large number of illegal drinking saloons actually did exist after its passage, and prior to the commencement of this action; hence, to the extent that illegal drinking saloons existed in Kansas from 1859, when they were first declared by statute to be public nuisances, and to be subject to be "shut up and abated," down to the time when this action was commenced, in May, 1882, the suggestion that this is a novel proceeding, and consequently to be looked upon with disfavor, has force.

It would seem that one of the main objects of the prosecu-

tion in instituting this proceeding in a court of equity in contradistinction to a court of law is, to obtain a judicial determination enunciating the doctrine that an adequate remedy exists and will be exercised, in equity and by injunction, for the suppression of all illegal traffic in intoxicating liquors, *independent of juries and of the jury system.* It is not to avoid judges that this action was commenced, for the same judge that administers law in this state also administers equity. In this state law and equity are blended, so far as they can be blended, and both are administered by the same court. It would seem that the prosecution has a very great distrust of juries, and would wish wholly to ignore them in all prosecutions for the suppression of the illegal traffic in intoxicating liquors. Juries may not be perfect, but we can hardly ignore them until our entire system for the administration of justice is wholly revolutionized and changed. It has often been said that juries are the palladium of all our rights and liberties. And the value of juries is recognized by courts of equity as well as by courts of law. In many states of this Union, courts of equity will utterly refuse to take jurisdiction in cases of nuisance until the plaintiff's right has first been established in a court of law. This is presumably for the reason that they think that the questions of fact should be first determined by a court of law *with a jury.* And courts of equity in their discretion often submit questions of fact to a jury for their consideration and determination. In Kansas, a court of equity, in a proper case, will undoubtedly take jurisdiction of a nuisance, although the plaintiff's right has not yet been established in any other court. But even in Kansas, we would think that where the facts are extremely doubtful, or are difficult to be ascertained, a court of equity in its discretion would not grant relief until all the questions of fact had first been submitted to a jury and been determined by them. And if this be so, then but little can be gained by commencing prosecutions for the suppression of nuisances or of illegal drinking saloons in a court of equity rather than in a court of law.

We think the statutory remedy of abatement is ordinarily a sufficient remedy for the suppression of illegal drinking saloons; and that it and the other remedies furnished by statute are really the only remedies which should ordinarily be resorted to. Of course, instances might be found where the statutory remedy of abatement might not be sufficient. The place to be suppressed, for instance, might be not merely an illegal drinking saloon, but it might in fact be a combination of various kinds of illegal employments and transactions. It might, in connection with the illegal sale of intoxicating liquor, be a gambling house, or a bawdy house, or a place where other illegal and disorderly practices might also be carried on and indulged in. Now the statutory remedy of abatement reaches only to the suppression of the illegal manufacture and sale, and keeping for sale, of intoxicating liquors; and hence the abatement of those things only might not be a complete and adequate remedy for the whole combination of illegal and disorderly things which might be carried on in the same building. Other cases might be supposed, wherein the statutory remedy of abatement might not be sufficient; and wherever it is not sufficient, wherever it and all other remedies furnished by the statutes are not complete and adequate, then injunction may be resorted to for the purpose of furnishing a complete and adequate remedy. We should not assume, however, that the statutory remedies are not sufficient for any ordinary case. The legislature has attempted to furnish adequate remedies, and it would certainly not be modest in us to declare that it has not done so until after a fair trial of its remedies has been had, and such remedies found to be insufficient. We should give to the legislature credit for possessing wisdom enough to provide for all ordinary cases; and we should always hold the express remedies given by the legislature to be sufficient until after a fair trial, and until after they were found to be insufficient, except perhaps in a few extraordinary and unanticipated cases, where the express remedies provided for by the legislature might be found to be insufficient. There does not appear to be any

necessity for any remedy in the present case except the statutory remedies. There certainly does not appear to be any necessity for an injunction. The court below so found, and we think correctly. If the saloon in controversy had been "shut up and abated," under the statute, it would, in all probability have remained "shut up and abated." Indeed, we know from information received outside of the record, that it has been closed for some time. This knowledge, however, can have no influence in the decision of this case.

We cannot say that the court below erred in refusing the injunction in this case; and therefore the judgment and order of the court below in this case will be affirmed.

All the Justices concurring.