STATE OF MISSOURI EX REL. CIRCUIT ATTORNEY, Appellant, *v.* WALBURGA UHRIG ET AL., Respondents.

December 4, 1883.

EQUITY — INJUNCTION — NUISANCE — DRAM-SHOPS. — Equity will not restrain the keeping of an unlicensed dram-shop, though the keeping of it is a public nuisance.

APPEAL from the St. Louis Circuit Court, ADAMS, J. *Affirmed.*

E. C. ELIOT and J. G. LODGE, for the appellant.

KEHR & TITTMANN, for the respondent.

THOMPSON, J., delivered the opinion of the court.

This proceeding is in the nature of an information in equity, by the circuit attorney of the city of St. Louis, to procure an injunction against the keeping of an unlicensed dram-shop, on the ground that it is a public nuisance. A demurrer to the petition was sustained by the circuit court. The only question which we shall consider is, whether such relief can be had upon any state of facts and against proper parties.

I. We do not question the proposition that the keeping of an unlicensed dram-shop is a public nuisance. That has

been repeatedly held, in conformity with the general rule of law that the repeated and habitual doing of an unlawful act becomes a nuisance by reason of the repetition of the act and the continuity of the practice. [Roscoe Crim. Ev. (7th ed.), 799 ; *The Commonwealth* v. *Smith*, 6 B. Mon. 23 ; *Wilson* v. *The Commonwealth*, 12 B. Mon. 2 ; *Meyer* v. *The State*, 42 N. J. L. 145 ; *The State* v. *Williams*, 30 N. J. L. 102, 110 ; *The State* v. *Crawford*, 28 Kan. 726.]

II. But courts of equity have never exercised a general jurisdiction to enjoin public nuisances upon information brought and prosecuted on behalf of the public. On the contrary, this jurisdiction has been exercised within such narrow limits that it must be regarded as a very special and exceptional jurisdiction.

So far as I can ascertain after an extensive search, it has never been exercised, either in England or in this country, except in the three following classes of cases : —

1. To restrain purprestures of public highways or navigations. [*Attorney-General* v. *Forbes*, 2 Mylne & Cr. 123 ; *Attorney-General* v. *Johnson*, 2 Wils. Ch. 87 ; *Attorney-General* v. *Sheffield Gas Co.*, 3 De Gex, M. & G. 304 ; *District-Attorney* v. *Railroad Co.*, 16 Gray, 242 ; *Attorney-General* v. *Cambridge*, 16 Gray, 247.]

2. To restrain threatened nuisances dangerous to the health of a whole community. [*Attorney-General* v. *Blount*, 4 Hawks, 384 ; *Attorney-General* v. *Hunter*, 1 Dev. Eq. 12.]

3. To restrain *ultra vires* acts of corporations injurious to public right. [*Attorney-General* v. *Railroad Co.*, 1 Drew. & Sm. 154 ; *Attorney-General* v. *Railroad Co.*, L. R. 3 Ch. 100 ; *Attorney-General* v. *Railroad Co.*, 4 De Gex & Sm. 75 ; *Attorney-General* v. *Mayor*, 1 Mylne & Cr. 171 ; *Attorney-General* v. *Corporation of Litchfield*, 13 Sim. 546 ; *Attorney-General* v *Mayor*, 2 Mylne & Cr. 406 ; *Attorney-General* v. *Railroad Cos.*, 35 Wis. 425.] An examination of the cases under this last head will show that the jurisdiction in this regard is exercised sometimes on the

ground of nuisance, and sometimes on the ground of trust, and in particular cases, perhaps, on both grounds.

III. Unquestionably, the exercise of equity jurisdiction in these three classes of cases, is an exception to a very general, well understood, and important rule. That rule is, that a court of equity has no jurisdiction in matters of crime. In these three classes of cases, jurisdiction is, however, exercised for special reasons, although unquestionably, the nuisance complained of is a misdemeanor, and subject to prosecution by indictment. [The general rule, with these isolated exceptions, has been constantly asserted and applied in a variety of cases. *Holderstaffe* v. *Saunders*, 6 Mod. 16; *Montague* v. *Dudman*, 2 Ves. Sr. 296; *Gee* v. *Pritchard*, 2 Swanst. 402, 413; *Brandreth* v. *Lance*, 8 Paige, 24; *Montgomery, etc., R. Co.* v. *Walton*, 14 Ala. 207; *Portis* v. *Fall*, 34 Ark. 375; *Gault* v. *Wallace*, 53 Ga. 675; *Phillips* v. *Mayor*, 61 Ga. 386; *Kerr* v. *Corporation of Preston*, 6 Ch. Div. 463. Perhaps the most striking illustration of this rule is that a court of equity will not enjoin the publication of a libel at the suit of the person against whom the injury is threatened, merely because it is a libel, for this is a misdemeanor; and this without reference to the grievous injury to private reputation which the publication may inflict; though it constantly exercises jurisdiction to enjoin the publication of books, manuscripts and letters, on the ground of injury to proprietary rights therein. *Life Association* v. *Boogher*, 3 Mo. App. 173; *Lawrence* v. *Smith*, Jacob, 471; *Prudential Ins. Co.* v. *Knott*, L. R. 10 Ch. 142; *Mulkern* v. *Ward*, L. R. 13 Eq. 619; *Singer Manufacturing Co.* v. *Machine Co.*, 49 Ga. 70; *Morris* v. *Kelly*, 1 Jac. & Walk. 431; *Wetmore* v. *Scovell*, 3 Edw. Ch. 515; *Fleming* v. *Newton*, 1 H. L. Cas. 363, 376; *Seeley* v. *Fisher*, 2 Swanst. 581; *Brandreth* v. *Lance*, 8 Paige, 24. The doctrine that the king could take his choice in which one of his courts he would bring his action I find asserted in a single case only, and

that was a case in the Irish court of chancery. *Attorney-General* v. *Mayor*, Molloy, 95. This doctrine never was the law of England. If it had been it would, during the reigns of such kings as the Jameses and the Charleses, have turned all criminal prosecutions into chancery.

IV. ™ It is thus seen that this action proceeds upon the idea that we are at liberty to enlarge the jurisdiction of equity, by extending it to the restraint of a criminal matter, to which it has never hitherto attached. The English court of chancery, which has steadily refused to do this, has not proceeded under the restraints of a written constitution; but if we undertake to do it, we do it in the very face of some of the most important provisions of our bill of rights. That instrument declares that " in criminal prosecutions, the accused shall have the right to    *    *    *    trial by an impartial jury of the country." Const. Mo., Art. II., sect. 22. But here we are asked to lay down a rule which obliges him to submit to a trial before a single judge sitting as a chancellor. The same instrument also provides that " no person shall for felony be proceeded against criminally, otherwise than by indictment, except in cases arising in the land or naval forces, or in the militia when in actual service in time of war or public danger; in all other cases, offenses shall be prosecuted criminally, by indictment or information, as concurrent remedies." *Ibid.*, sect. 12.

The information here spoken of unquestionably means, not an information in equity, but an information exhibited in a court of criminal jurisdiction, in which proceeding the accused has the right to a trial by jury. But we are asked to substitute for this information, an information in a court of equity, in which the whole matter, both of law and fact, is passed upon by a single judge. But there is, in the same instrument, another provision which makes it still more clear that this jurisdiction can not be extended : " The right of trial by jury, *as heretofore enjoyed*, shall remain inviolate." *Ibid.*, sect. 28. We have already sufficiently

indicated that the right of trial by jury has always been enjoyed in England and America in prosecutions for public nuisances, except in three classes of cases, of which the present case is not one.

V. Nor is there force in the argument that this is not a proceeding to punish a single act of unlicensed dram-selling, but to restrain a succession of acts, which, by reason of their frequency and continuity have become a public nuisance. The fact remains that the succession and continuity of the unlawful acts complained of can only be proved by proving isolated acts. What then would be the result of this proceeding, if an injunction were granted and disobeyed? An attachment would issue for a contempt, and then a single judge, sitting as chancellor, would hear evidence and try the facts whether the defendants had committed such isolated criminal acts — facts which, with the exceptions already stated, the law has always required to be contested before a jury.

We have had no doubt upon this question from the moment it was mentioned to us at the bar, and we declined to hear the counsel for the respondents upon it. But we have written this much, because we have felt that, having reference to the character of the plaintiff's counsel, to the zeal with which their view of the case has been pressed upon us, and possibly to a public interest centering in its decision, it was a question which ought not to be dismissed with a mere dash of the pen. We have been the more inclined to look into it from the fact that a very respectable court in a neighboring-state has taken precisely the view of it which the plaintiff's counsel here urges, though the circumstances of the particular case were held not to call for an injunction. *State* v. *Crawford*, 28 Kan. 726.

The judgment of the circuit court is affirmed. All the judges concur.