### PEOPLE v. ECKERSON.

(Supreme Court, Appellate Division, Second Department.    June 4, 1909.)

1. NUISANCE (§ 59*)—NATURE OF CRIME IN GENERAL.

　　To sustain a conviction for committing or maintaining a public nuisance, it must be established beyond a reasonable doubt, first, that an act has been unlawfully done, or the performance of a duty omitted which is criminal in its nature; second, that defendant committed such act or omitted to perform such duty; and, third, that such act or omission was with criminal intent on defendant's part.

　　[Ed. Note.—For other cases, see Nuisance, Cent. Dig. §§ 135, 136; Dec. Dig. § 59.*]

2. MUNICIPAL CORPORATIONS (§ 700*) — OBSTRUCTION OF STREET — CRIMINAL PROSECUTION— PRINCIPAL TO CRIME—QUESTION FOR JURY.

　　In a prosecution for committing or maintaining a public nuisance by obstructing a street and rendering it dangerous for passage, evidence *held*

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sufficient to go to the jury on the question whether defendant was not the principal to the crime, within the definition of Pen. Code, § 29.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 700.*]

3. MUNICIPAL CORPORATIONS (§ 700*)—PUBLIC NUISANCE IN CONNECTION WITH STREET—INSTRUCTION AS TO MEANING OF STATUTE.

Pen. Code, § 385, defining a public nuisance in connection with a public street, classifies acts or omissions under three heads: (a) Those which interfere therewith; (b) those which tend to obstruct the same; (c) those which render it dangerous for passage. *Held*, that the statute only condemns that which is in fact presently dangerous, and not that which may tend, in common with some other thing, which may or may not occur, to make it dangerous in future, and that an excavation 200 feet from a street could not of itself interfere with, obstruct, or tend to obstruct it, or render the street dangerous for passage; and hence a charge that, if such excavation produced a condition which was reasonably certain to produce a sliding down of the highway, to the extent of obstructing it and making it dangerous for passage, the creation of that condition of imminent peril would within the meaning of the statute, tend to obstruct and render it dangerous for passage was fatally erroneous.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 700.*]

4. MUNICIPAL CORPORATIONS (§ 700*)—"INTERFERENCE" WITH PUBLIC STREET OR HIGHWAY.

The term "interference," used with reference to a public street or highway, conveys the idea of actual disturbance.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 700.*

For other definitions, see Words and Phrases, vol. 4, pp. 3710, 3711.]

5. MUNICIPAL CORPORATIONS (§ 700*)—"OBSTRUCTION" OF PUBLIC STREET OR HIGHWAY.

The term "obstruction," used with reference to a public street or highway, means the placing of obstacles or impediments in the way, so as to prevent free passage along it and render it difficult for travel.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 700.*

For other definitions, see Words and Phrases, vol. 6, pp. 4890–4894.]

6. MUNICIPAL CORPORATIONS (§ 700*) — OBSTRUCTION OF STREET — CRIMINAL PROSECUTION—SUFFICIENCY OF EVIDENCE.

In a prosecution for a public nuisance in a street, *held*, that the evidence wholly failed to establish that it had been rendered dangerous for passage.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 700.*]

7. HIGHWAYS (§ 163*)—OBSTRUCTION—EXCAVATIONS.

If an excavation is made so close to a highway that a traveler using the same might inadvertently fall therein, it would doubtless be a public nuisance, as rendering the highway dangerous without an intervening second cause; but an excavation 200 feet distant cannot make it dangerous, without an intervening second cause.

[Ed. Note.—For other cases, see Highways, Dec. Dig. § 163.*]

8. CRIMINAL LAW (§ 1*)—NATURE OF CRIMINAL ACT—FUTURE POSSIBILITIES—NECESSITY OF EXISTING FACTS.

As a general rule, the criminal law does not deal with future possibilities, but has to do with existing facts, which must be established beyond a reasonable doubt.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 1.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

9. HIGHWAYS (§ 163*)—OBSTRUCTION—RENDERING HIGHWAY DANGEROUS FOR PASSAGE—CORPUS DELICTI.

In a prosecution for a public nuisance, rendering a highway dangerous for passage, the corpus delicti, the criminal fact, is that the highway is at the present time dangerous, and not that by reason of the probable or reasonably certain happening of some event, which has not yet occurred, it may thereafter and thereby become dangerous.

[Ed. Note.—For other cases, see Highways, Dec. Dig. § 163.*]

10. MUNICIPAL CORPORATIONS (§ 700*)—OBSTRUCTION OF STREETS—RENDERING STREET DANGEROUS FOR PASSAGE—EVIDENCE OF CRIMINAL INTENT.

In a prosecution for a nuisance, rendering a street dangerous for passage, *held*, that the evidence did not establish criminal intent.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 700.*]

11. CRIMINAL LAW (§ 1189*)—APPEAL—ERROR—GRANTING NEW TRIAL ON REVERSAL.

The power given the court by Code Cr. Proc. § 543, to order a new trial, if necessary or proper, on reversal of a judgment, will not be exercised where, in view of the determination on appeal, it would be impossible to secure a conviction, and the granting of a new trial would be a needless ceremony.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3225, 3226; Dec. Dig. § 1189.*]

Gaynor, J., dissenting in part.

Appeal from Trial Term, Dutchess County.

J. Esler Eckerson was convicted of committing or maintaining a public nuisance, and he appeals. Reversed.

Argued before HIRSCHBERG, P. J., and WOODWARD, GAYNOR, JENKS, and BURR, JJ.

Abram F. Servin, for appellant.

Thomas Gagan (Frank Comesky, on the brief), for the People.

BURR, J. The defendant was convicted of committing or maintaining a public nuisance in the village of Haverstraw, in the county of Rockland. To sustain the judgment it must be established beyond a reasonable doubt, first, that an act has been unlawfully done or the performance of a duty omitted which is criminal in its nature; second, that the defendant committed such act or omitted to perform such duty; and, third, that such act or omission was with criminal intent on the part of the said defendant. The counts of the indictment upon which the district attorney elected to stand charged that between the 1st day of May, 1906, and the date of the finding of the indictment on July 11, 1907, for a space of 200 feet west of the easterly end of a public highway known as Jefferson street, as it then existed and had existed for about four months, the defendant had removed the clay, sand, and earth which constituted and formed the natural and lateral support of said highway. The indictment failed to charge, and the proof failed to show, any actual physical interference with the highway itself, either by way of obstruction or otherwise. It did show that the defendant was the owner of an estate in the land to the north of Jefferson street, either in his own right or as trustee of an express trust created by the former owners thereof. The defendant himself

had not done any of the excavating complained of. It had all been done by the tenants to whom the property had been leased, for the purpose of obtaining clay and sand, principally the former, to be used in making brick. Inasmuch as the purpose and object of the leasing was to permit the taking out of sand and clay for such purpose, and inasmuch as the evidence was undisputed that the defendant was present on the leased premises while the excavation was going on, and in some instances directed the tenants where to dig, and laid out the benches and clay bank, and instructed the tenants how to work them, we think that, if the criminal fact should be established, there was sufficient to require the court to submit to the jury the question whether he was not a principal to the crime within the statute definition thereof. Pen. Code, § 29; People v. Mills, 178 N. Y. 274, 70 N. E. 786, 67 L. R. A. 131; People v. Kief, 126 N. Y. 661, 27 N. E. 556. We propose, therefore, to examine this case as though the defendant himself had made the excavations complained of.

The most southerly line of the leased premises was about 200 feet north of the northerly line of Jefferson street. The digging of clay, which it is claimed tended to render Jefferson street dangerous for passage, was to the north of this line, and was principally in connection with a knoll or mound of clay which had been dug down or undermined and allowed to fall into a deep pit adjoining it, so that the material might be the more readily obtained for use. There was some slight evidence that at one point sand had been removed within the lines of Jefferson street, and that clay had been removed to a point within 50 feet of the north line of the said street. But it does not appear that these acts were within that portion of the street referred to in the indictment, nor is the depth or extent of such excavation made to appear; and it further appears that where the sand was excavated filling was subsequently made, so that the original surface of the land was nearly or quite restored. It is perfectly clear that the case was not tried nor submitted to the jury upon the theory that these last-mentioned acts were within those complained of or relied upon to secure a conviction. Although the nearest point of substantial excavation was at least 200 feet distant in a northerly direction from the north line of the street, although about six months had elapsed from the completion of such excavation to the time of the finding of the indictment, and over a year to the date of the trial, although no disturbance nor subsidence had occurred either in the street itself or in the ground intervening the line of the street and the line of the excavation, and although there was no evidence of any cracks in the earth, or of any physical disturbance therein, which had actually occurred or was impending, so far as could be seen, the learned trial court charged the jury that if such excavation "produced a condition such that that condition was reasonably certain to produce a sliding down of that highway to the extent of obstructing it and making it dangerous for passage, that the creation of that condition of imminent peril was a condition within the meaning of the statute tending to obstruct and rendering dangerous for passage." This instruction was excepted to, and we think was fatally erroneous.

The Penal Code, in defining a public nuisance in connection with a

public street or highway, classifies acts or omissions under three heads: (a) Those acts or omissions which interfere therewith; (b) those acts or omissions which obstruct or tend to obstruct the same; and (c) those acts or omissions which render it dangerous for passage. Pen. Code, § 385. It is manifest that the act of excavating at a distance of 200 feet from a highway cannot of itself either interfere with or obstruct it or tend to obstruct it. Interference conveys the idea of actual disturbance. Obstruction is placing obstacles or impediments in the way, so as to prevent free passage along it and render it difficult for travel. Ray v. City of Manchester, 46 N. H. 59, 88 Am. Dec. 192; Chase v. Oshkosh, 81 Wis. 313, 51 N. W. 560, 15 L. R. A. 553, 29 Am. St. Rep. 898; Overhouser v. American Cereal Co., 118 Iowa, 417, 92 N. W. 74; Gorham v. Withey, 52 Mich. 50, 17 N. W. 272. Neither does such act of excavation of itself and independent of any other cause make the street dangerous for passage. While the statute condemns that which actually obstructs or tends to obstruct, when it speaks of those things which make it dangerous for passage, it only condemns that which is as matter of fact presently dangerous, and not that which may tend, in connection with some other thing which may or may not subsequently occur, to make it dangerous in the future. If an excavation were made so close to the highway that a traveler lawfully using the same might inadvertently fall therein, such excavation would doubtless be a public nuisance; for solely because of it, and without any intervening second cause, the passage along the highway was thereby made dangerous. But an excavation 200 feet distant can never make the highway dangerous, without some intervening second cause. It may "tend to make dangerous," because it may render possible a subsidence of the intervening earth, thus destroying or injuring the highway. But the subsidence, not the excavation, would be the immediate cause of the danger. The jury were told that, although no danger had resulted, yet if the act of the defendant tended, not beyond a reasonable doubt, but with reasonable certainty, to set in operation other causes which would result in making the highway dangerous, that was sufficient to establish the crime. Such instruction is not in accordance with the words of the statute.

But not only did the trial court err in stating to the jury the rule of law applicable to the case, but the evidence wholly failed to establish the basic proposition that the highway had been rendered dangerous for passage. This is not only no evidence of present danger, but the only evidence of danger in the future is found in the opinions of certain experts that at some indefinite time there will be a subsidence of the soil between the line of the highway and the place of the excavation; and while no one can assume or does assume to tell the extent of that subsidence, or the time of it, in the opinion of these experts, when it does happen it will be sufficient in extent to reach to the highway and disturb the surface thereof. As a general rule the criminal law does not deal with future possibilities. It has to do with existing facts, which facts must be established beyond a reasonable doubt. It would be a strange innovation in criminal procedure if a person could be indicted and convicted of either of the degrees of homicide upon proof that the accused had inflicted a wound upon an-

other human being which, in the opinion of medical experts, would at some future time result in his death, although at the time of the indictment and trial he was still alive. The criminal fact which in such a case constitutes the corpus delicti is the fact of death which has already occurred, not death which may, or even certainly will, occur in the future. It must be an existing fact, not a possibility, nor even a reasonable certainty. People v. Palmer, 109 N. Y. 110, 16 N. E. 529, 4 Am. St. Rep. 423. In the case at bar the corpus delicti, the criminal fact, is that the highway is at the present time dangerous for passage, not that by reason of the probable, or even reasonably certain, happening of some event which has not yet occurred, it may thereafter and in consequence of that become dangerous. In a civil action on the equity side of the court it is permissible to anticipate an evil and take measures which shall prevent an impending wrong. Milburn v. Fowler, 27 Hun, 568; Trustees of Haverstraw v. Eckerson, 124 App. Div. 18, 108 N. Y. Supp. 506, affirmed 192 N. Y. 54, 84 N. E. 578. The criminal law does not anticipate, but waits to punish until the wrong has been actually committed.

We think, also, that the evidence in this case failed to establish any criminal intent on the part of the defendant. Again, the criminal fact must not be lost sight of. The criminal fact was making the highway dangerous for passage. Undoubtedly the jury could have found that the defendant intended that the excavation that was made should be made; but did he intend thereby, or was it a necessary or natural result therefrom, that the highway should in any way be immediately affected? We have searched the record in vain for any satisfactory evidence thereof. The evidence points to the converse of this. It appears that between the line of excavation and the northerly side of Jefferson street there was a private road, under the control of and maintained by the defendant, to give access to other portions of his property. Self-interest would require that this road should be maintained. But no possible danger could occur to Jefferson street by reason of subsidence without the total destruction of that road first occurring. The leases which are in evidence of that part of the premises which lie nearest to Jefferson street contain express provisions that no excavation shall be made which shall interfere either with the maintenance of this private roadway or of the public street paralleling the same. There was some evidence of an alleged conversation with the defendant, in which, in speaking of his purpose to excavate in the future, he said that, if the street went down after his death, it would not bother him any. This would indicate that no condition of imminent peril suggested itself to his mind, and, further than that, this conversation seems to relate to digging at a point to the east of the east end of Jefferson street, while the acts complained of in the indictment are alleged to have occurred to the west of the said point.

If the conclusions which we have reached are sound, this judgment must be reversed, and it becomes unnecessary to consider the exceptions to the rulings of the court upon the admission of evidence, some of which are serious in character. This court is given the power, upon the reversal of a judgment, to order a new trial, if necessary or

proper. Code Cr. Proc. § 543. In view of our determination with regard to the main question, it will be impossible under this indictment to ever secure a conviction, and therefore the granting of a new trial would be a needless ceremony.

The judgment of conviction should be reversed, and the indictment dismissed.

HIRSCHBERG, P. J., and WOODWARD and JENKS, JJ., concur.

GAYNOR, J. I concur, but not in what is said on the necessity of a "criminal intent." That bald phrase often serves to secure an acquittal on a false notion in the minds of the jury. In the case of offenses mala prohibita, it is misleading to use it, for an intention to do wrong, in the moral sense, is not there necessary. And even in the case of offenses mala in se it is misleading. One who steals my wagon in his zeal to distribute Bibles, or my money to give it to a hospital for crippled children, has no criminal intent, but a lofty conception and purpose; and yet he is guilty of larceny. His intent to take the money is the essential thing that makes the larceny, and his good intent, or lack of "criminal intent," does not save him, any more than taking a plural wife in obedience to one's religious belief, or belief in the Old Testament, would save him from conviction for polygamy or bigamy. Cases like People v. Wiman, 148 N. Y. 29, 42 N. E. 408, do much to thwart the effective administration of the criminal law. With too much emphasis on presumption of innocence, and guilt beyond a reasonable doubt, and the necessity of criminal intent, rogues often go free.