PEOPLE v. GROUT. .

SAME v. ASHLEY.

(Supreme Court, Special Term, Kings County.   May 14, 1914.)

1. CRIMINAL LAW (§ 308*)—EVIDENCE—PRESUMPTIONS—INNOCENCE.
   It is presumed that defendants are innocent of the charge made against them in the indictments.
   [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 731; Dec. Dig. § 308.*]

2. PERJURY (§ 12*)—FALSE AFFIDAVIT—KNOWLEDGE OF FALSITY.
   Defendants could not be convicted for swearing to a false affidavit unless its falsity was known to them.
   [Ed. Note.—For other cases, see Perjury, Cent. Dig. §§ 55–61; Dec. Dig. § 12.*]

3. INDICTMENT AND INFORMATION (§ 144*)—DISMISSAL—RECEIPT OF INCOMPETENT AND IRRELEVANT TESTIMONY.
   That incompetent and irrelevant testimony was given before the grand jury was not ground for dismissing the indictments, if there was also legal evidence sufficient to make out a prima facie case; the grand jury being composed of laymen and authorized to conduct its examinations without the assistance of counsel.
   [Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 488; Dec. Dig. § 144.*]

4. GRAND JURY (§ 34*)—PARTICIPATION OF PROSECUTING ATTORNEY.
   The grand jury is not obliged to call in the district attorney, but may vote to indict without his presence and even against his advice.
   [Ed. Note.—For other cases, see Grand Jury, Cent. Dig. §§ 73, 85; Dec. Dig. § 34.*]

5. GRAND JURY (§ 33*) — EXAMINATION OF WITNESSES — CHARACTER OF EVIDENCE.
   The grand jury must not indict on incompetent evidence, but only upon legal evidence showing the commission of crime, and which, unexplained and unanswered, affords reasonable ground for charging such crime on the defendants.
   [Ed. Note.—For other cases, see Grand Jury, Cent. Dig. §§ 70, 71, 79, 80; Dec. Dig. § 33.*]

6. INDICTMENT AND INFORMATION (§ 144*)—DISMISSAL—CONDUCT OF DISTRICT ATTORNEY.
   That the district attorney created an atmosphere prejudicial to the defendants before the grand jury was not ground for dismissing the indictments against them, for if that was a ground for dismissal very few indictments would stand.
   [Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 488; Dec. Dig. § 144.*]

7. INDICTMENT AND INFORMATION (§ 144*)—DISMISSAL—SUFFICIENCY OF EVIDENCE.
   Evidence before the grand jury *held* sufficient to support the indictments for swearing to a false affidavit as against motions for dismissal.
   [Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 488; Dec. Dig. § 144.*]

8. INDICTMENT AND INFORMATION (§ 144*)—DISMISSAL—SUFFICIENCY OF EVIDENCE.
   A judge at Special Term will not, upon motion to dismiss an indictment, assume to decide whether defendants in signing an affidavit knew

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that it was false, but that, like questions of motive and intent, will be kept for the trial court.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 488; Dec. Dig. § 144.*]

9. INDICTMENT AND INFORMATION (§ 144*)—DISMISSAL—SUFFICIENCY OF EVIDENCE.

An indictment will not be dismissed for insufficiency of the evidence before the grand jury, where a definite charge is made and apparently supported by prima facie proof.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 488; Dec. Dig. § 144.*]

10. PERJURY (§ 11*)—OFFENSES—STATUTORY PROVISIONS.

Under Penal Law (Consol. Laws, c. 40) § 1620, defining "perjury" as the making of a false "oath required by law," an indictment could not be based on an affidavit attached to a bank report prepared for publication, which was not required to be verified under the Banking Law.

[Ed. Note.—For other cases, see Perjury, Cent. Dig. §§ 38–54; Dec. Dig. § 11.*

For other definitions, see Words and Phrases, vol. 6, pp. 5305–5310; vol. 8, p. 7751.]

11. PERJURY (§ 10*)—OFFENSES—STATUTORY PROVISIONS.

Under Penal Law (Consol. Laws, c. 40) § 1620, defining "perjury" as the making of a false "oath required by law," and Banking Law (Consol. Laws, c. 2) § 21, requiring the verification of the quarterly reports of banks, the swearing to a false report was perjury, though the affidavit read to "the best of the affiants' knowledge and belief," as permitted by Laws 1898, c. 333.

[Ed. Note.—For other cases, see Perjury, Cent. Dig. §§ 36, 37; Dec. Dig. § 10.*]

12. INDICTMENT AND INFORMATION (§ 144*)—DISMISSAL—COMPETENCY OF EVIDENCE.

That certain testimony given by defendant before a previous grand jury, when he waived his right to refuse to testify, was read before the grand jury which returned the indictment, was not ground for dismissing the indictment, as the prosecution was entitled to prove any voluntary declaration made by defendant concerning the matter under investigation.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 488; Dec. Dig. § 144.*]

Edward M. Grout and James T. Ashley were separately indicted for perjury, and they move to dismiss the indictments. Motions denied.

Stephen C. Baldwin and Andrew F. Van Thun, Jr., both of Brooklyn, for defendants.

James C. Cropsey, Dist. Atty., of Brooklyn (Hersey Eggington, of Brooklyn, of counsel), for the People.

KELLY, J. The defendants having obtained orders allowing them to inspect the minutes of the grand jury which returned two separate indictments against them for perjury, on December 29, 1913, now move to dismiss the indictments upon the ground that the legal and competent evidence received by the grand jury was insufficient to warrant the finding of the indictments, that there was no legal or competent evidence warranting the finding thereof; they also charge that the grand jury received other than legal and competent evidence,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Dig. 1907 to date, & Rep'r Indexes

which improperly influenced their minds to such an extent and in such manner as to invalidate the indictments, and that the same were found upon illegal evidence. The indictments are identical in verbiage save as to the name of the defendant and his office or employment.

[1] The decision of these motions does not depend upon the actual guilt or innocence of the defendants. If the motions were granted, it would mean that the case would be submitted to another grand jury, and a denial of the motions is not any indication that the court has an opinion one way or the other on the merits. The defendants are presumed to be innocent of the charge made against them.

[2] I have given due consideration to the able argument of the learned counsel for the defendants and the district attorney, and have examined the very instructive briefs submitted on both sides, on the motions now before the court. I have reached the conclusion that the motions must be denied. I can see no good purpose to be served, however, by a detailed statement of my views upon the many interesting questions presented by the counsel for the defendants. The testimony of the witnesses examined before the grand jury has been digested by counsel, and the defendants' arguments and explanations must necessarily have great weight upon a trial, because, in a case of this kind, the intent of the defendants, the question whether they knew that the affidavit sworn to was false, is of supreme importance. It might be conceded that the affidavit was false, and yet the defendants would be entitled to acquittal unless the prosecution proves that its falsity was known to them.

[3-6] The defendants are justified in their charge that incompetent and irrelevant testimony was given before the grand jury. But that is not the question. If, in addition to the irrelevant testimony, there was legal evidence which made out a prima facie case, the indictments must stand. The fact that illegal evidence appears in the minutes does not avoid the indictments. This is so from the nature of the inquiry by the grand jury. It is an inquisitorial body, composed of laymen, who may conduct examinations and investigations without the assistance of counsel. They are not obliged to call in the district attorney, but may vote to indict without his presence and indeed against his advice. That hearsay and other incompetent testimony may be elicited before them is not surprising. But they must not indict on such testimony; they can only indict upon legal evidence showing the commission of crime, and which, unexplained and unanswered, affords reasonable ground for charging such crime on the defendants. I cannot find that the charge that the district attorney acted in bad faith in presenting the case is supported by the record. It is said that he created an atmosphere prejudicial to the defendants before the grand jury; but, if that was ground for dismissing an indictment, very few indictments would stand.

[7] In the case at bar, there is no dispute that on April 2, 1910, the defendants as president and cashier, respectively, of the Union Bank, verified the affidavit attached to the quarterly report furnished to the superintendent of banks under section 21 of the Banking Law. In compliance with the statute, each of the affiants made oath that the

report in question was true and correct in all respects to the best of his knowledge and belief.

This report of the financial condition of the bank on March 25, 1910, showed it to be entirely solvent on that day not only with assets sufficient to pay its liabilities in full, but it was stated in the report that the bank possessed, over and above its debts and liabilities including the amount due its depositors, resources equaling its capital stock of $1,000,000 and in addition a surplus amounting to $503,699.-51 market value. As already stated, this report was sworn to on April 2, 1910. Two days later, on April 4, 1910, the bank was closed by the state banking department. It had no surplus. The capital stock of $1,000,000 was gone. There was no money to pay the depositors, or the general unsecured creditors.

The making of the report and its contents were legally proven before the grand jury, the failure of the bank, and the absence of the assets reported, seem to be proven by competent evidence. I think that there was legal proof of the insolvency of the bank on April 4th, two days after the oath and ten days after the 25th of March, 1910, the date as to which the report was made. This is one of the specifications charged in the indictment upon which the grand jury base their charge that the affidavit of April 2d was false. There are a great many other details referred to in the indictment and specific charges of falsehood made concerning them. I mention this reported solvency and surplus of more than a million of dollars, as one item—one distinct charge, one fact concerning which there appears to have been legal evidence adduced.

Now, of course, it does not follow, because the surplus did not exist on April 4th, that the same condition existed on April 2d, or on March 25th. But it seems to me that it calls for explanation. The discrepancy is very great; the deficit runs into millions. And I have in mind that we might go further and concede that the affidavit was false, and yet the defendants might be innocent of crime. Guilty knowledge of its falsity must be brought home to the defendants beyond a reasonable doubt.

[8] It is this highly important branch of the case that seems to me to necessitate the denial of the motions to dismiss. Because this involves the searching of the minds and conscience of the defendants, and under our system of government, this must be done at a trial before a judge and jury. It is difficult, if not impossible, to prove guilty knowledge by direct evidence. Unless we had evidence of unequivocal acts or statements of the defendants showing criminal intent on their part, this element of the crime charged must be proven by circumstantial evidence. I have examined the case of People v. Acritelli, 57 Misc. Rep. 574, 110 N. Y. Supp. 430, and the other cases cited by the learned counsel for the defendants; but in my opinion it would be a dangerous departure from the theory of our laws regarding charges and prevention of crime, if a judge at Special Term, on a motion to dismiss an indictment, assumed to decide questions of motive and intent. If he can decide such questions in favor of a defendant on such a motion, why should he not be competent to decide them against him? The decision of these vital questions in all criminal prosecu-

tions, and of peculiar importance in cases such as here presented, was taken away from judges many years ago, and this great responsibility placed upon the trial court consisting of judge and jury. A judge presiding at a trial, duly commissioned to ascertain the guilt or innocence of a man charged with crime, has far greater powers in passing upon the sufficiency of evidence than the same judge sitting in Special Term, upon a preliminary motion to dismiss an indictment.

[9] Many of the arguments and explanations presented by the learned counsel for the defendants go far to clear some of the specifications of perjury from criminal motive. Many of the instances of false statements which the grand jury charge as perjury are apparently explainable. A judge presiding at the trial of the indictments may, on hearing the proof, refuse to submit these matters to the jury, or, having done so, may advise the jury to acquit; but granting the power of the court to dismiss an indictment at any time in the interest of justice, where we find a definite charge made and apparently supported by prima facie proof, followed by indictment by a grand jury, it is subversive of all legal principles in this country, for a judge, on a preliminary motion, to assume to himself the power to pass upon the guilt or innocence of a defendant. Under the law, these things are to be disposed of by a trial court.

[10] There are one or two other matters presented upon the argument and in the briefs submitted, to which I will refer. If this indictment for perjury was based solely upon the affidavit attached to the report prepared for publication, which report contained the statement that the total of bills payable as reported did not mature or become due until December, 1910, I should have grave doubt whether this unnecessary affidavit to what was in effect a summary of the report itself could be made the basis of a prosecution for perjury. The report prepared for publication is not required to be verified under the Banking Law. But while this is one of the many specifications in the indictment, the charge of perjury is not based solely upon that affidavit, or upon that report. The charge is that the main report was untrue in stating total assets and total liabilities, in showing a solvent institution, when in fact the bank was insolvent; the alleged discrepancy between the resources and liabilities, as reported and sworn to, varying from the truth and facts in amounts reaching millions of dollars. While evidence as to the transactions concerning this published report may be relevant on the question of intent on the main charge standing alone, I agree with defendants' counsel that it would not warrant indictment.

[11] The learned counsel for defendants also comment upon the legal effect of the addition to the affidavit of the defendants of the words "to the best of his knowledge and belief." By chapter 689, Laws 1892, the affidavit prescribed for these reports was to the effect "that the same is true and correct in all respects." By amendment, chapter 333, Laws 1898, the form of the oath was amended by adding these words, "to the best of his knowledge and belief." I have read the opinion in the case of Davenport v. Prentice, 126 App. Div. 451, 110 N. Y. Supp. 1056, and the court's suggestion as to the reasons which induced the Legislature to so amend the law. I may

say that in any prosecution for perjury, if it appeared that the defendant acted in good faith and to the best of his knowledge and belief, conviction would be impossible. As I have already remarked, it is not enough to show that the affidavit was false, but the prosecution must prove that the defendants acted corruptly in swearing to it. But I cannot go as far as the learned counsel in his claim that, in adding these words, the Legislature intended to so emasculate the statute that the oath was simply an idle form and meaningless. The public policy of the state of New York, as declared in its Banking Law, is to put these public depositories under state supervision. The superintendent of banks is vested with plenary powers to be exercised for the protection of the public at large, who may deal with these institutions. The requirement of frequent reports in detail of the resources and liabilities of banks and the publication of these reports appears to be a reasonable and necessary precaution. The law (Banking Law, § 21) requires these reports to be verified by the oath of the president and cashier of a banking corporation or by an individual banker in person. As long as the law contains this requirement of verification, the oath is an "oath required by law" as prescribed in the statute defining perjury. Penal Law, § 1620. I cannot assent to the argument that a false oath to a statement of such importance to the community is not within the prohibition of the statute against perjury, or that it is only punishable as a misdemeanor for violation of the Banking Law. A given act or omission may be a violation of the Banking Law, and, when the violation is clearly proven, conviction for misdemeanor may follow, although the wrongful intent may not be apparent. But the same act or omission may constitute a graver crime punishable as a felony. Upon the trial of the charge of felony, the corrupt intention is an essential part of the charge to be proven beyond a reasonable doubt.

[12] The defendant Ashley urges, as error, the reading in evidence before the grand jury, which returned this indictment, of certain testimony given by him voluntarily and upon waiver of his right to refuse to testify, before a previous grand jury in 1911. I think the people were entitled to prove any voluntary declaration made by him concerning the matter under investigation. People v. Kennedy, 159 N. Y. 346, 54 N. E. 51, 70 Am. St. Rep. 557; People v. Rogers, 192 N. Y. 331, 85 N. E. 135, 15 Ann. Cas. 177; People v. Brasch, 193 N. Y. 46, 85 N. E. 809.

I have carefully examined the specifications or particulars set forth in the indictment and the criticisms and explanations of the defendants' counsel concerning each of these separate charges. I refrain from discussing them separately here in justice to all the parties. These same arguments may well be presented to the judge at the trial, who, as I have suggested, has far broader powers and duties than a judge at Special Term passing upon a motion to dismiss the indictment. I do not want my omission to discuss them separately here taken as an indication that I have not examined them carefully. Many of these arguments would be very persuasive if addressed to a motion to withdraw certain of the items from the consideration of a jury at the trial. But to dismiss an indictment of this kind on a preliminary motion up-

on the theory that a judge at Special Term may take to himself the function of the jury and pass upon the facts and the inferences and the vital question of intent is contrary to my understanding of the fundamental law.

It follows that the motions to dismiss the indictments must be denied.