76                    PEOPLE v. HESS.

Court of Gen. Sessions, N. Y. County, January, 1920.    [Vol. 110.

THE PEOPLE OF THE STATE OF NEW YORK v. SIMON B.
   HESS and METROPOLITAN ELECTRIC PROTECTION COM-
   PANY, Defendants.

(Court of General Sessions of the Peace in and for the County of
                    New York, January, 1920.)

Nuisance — what constitutes a public — evidence — Penal Law,
   § 1530(1).

   The ringing of an electric alarm bell for such a period of time
   and in such circumstances as to annoy, injure or endanger the
   comfort, repose or health of any considerable number of per-
   sons, may constitute a public nuisance under section 1530(1)
   of the Penal Law, regardless of the fact that the purpose of
   installing such bell and the use to which it is intended to be
   put, is the detection of crime.

   An electric alarm bell installed by the defendant corporation
   on the outside of a loft building in the vicinity of the New
   York Hospital, located at No. 8 West Sixteenth street in the
   city of New York, rang one night without cessation from nine
   to eleven P. M.  The evidence before the grand jury established
   that among those disturbed were the inmates of said hospital,
   that the bell could be heard at a distance of seven hundred and
   twenty feet, was heard distinctly at Seventh avenue and Seven-
   teenth street and the sounds re-echoed from the buildings
   opposite.  There was no evidence as to what caused the bell
   to ring but it had gone off without any one entering the build-
   ing and continued to ring until stopped by an employee of the
   defendant corporation after notice from the police.  It also
   appeared that the other defendant, the president of the cor-
   poration and in charge, upon being notified of many complaints
   concerning the long-continued ringing of the bells installed
   by the company had said that his business was a cheap sub-
   stitute for a burglar alarm system, that he did not have to
   maintain any wires like other systems or ask for permission
   to run wires under the street or pay any rent for conduits
   for running wires, and that a bell would ring until he was
   notified unless one of his men happened to hear it.  *Held,* that
   the evidence was sufficient to establish a *prima facie* case of

public nuisance, and defendants' motion to dismiss the indictment will be denied, there being sufficient legal evidence to support the indictment.

MOTION to dismiss indictment.

House, Grossman & Vorhaus, for motion.

Edward Swann, district attorney, opposed.

WADHAMS, J.    The defendants, the Metropolitan Electric Protection Company, a corporation having its office at No. 130 West Twenty-sixth street, borough of Manhattan, and its president, Simon B. Hess, are charged with the crime of nuisance in that they did wilfully and unlawfully cause and permit an electric gong and bell to strike and ring at unlawful hours at premises No. 26 West Seventeenth street.

The defendants have moved to dismiss the indictment upon the ground that it is founded upon incompetent and insufficient legal evidence and not sufficient to constitute a crime.

It appears from the evidence that the defendant company has installed about 600 electric alarm bells on the outside of buildings in this city. The bell is connected with a circuit which is wired through the interior of the building. The alarm is not connected with and does not register at any central office from which the ringing of the bell may be stopped. When the circuit is broken the bell is set ringing and it will continue to ring until someone who has access to the premises has stopped it. The bell may be set ringing not only by a forced entry but also by vibration of wind or damp weather causing a short circuit or rotting of the wires, and it may ring if the premises are not properly closed.

The defendant company employs thirty night watchmen, covering a territory extending from the Battery

to Fifty-ninth street, whose duty it is when hearing the ringing of the bell to notify the company at its office from which the defendant company sends men to open the premises, investigate the cause of the alarm and stop the ringing of the bell.

Section 1530 of the Penal Law defines a public nuisance as follows: "A ' public nuisance ' is a crime against the order and economy of the state, and consists in unlawfully doing an act, or omitting to perform a duty, which act or omission:

" 1. Annoys, injures or endangers the comfort, repose, health or safety of any considerable number of persons."

The statute is declaratory of the common law. *People* v. *Borden's Condensed Milk Company,* 165 App. Div. 711, 713.

The gravamen of the offense here complained of is an act alleged to annoy and endanger the comfort, repose and health of a considerable number of persons resident in the neighborhood by a prolonged ringing of the defendant company's bells.

Noise alone, or noise accompanied by vibration, if it be of such character as to be productive of actual physical discomfort and annoyance to a person of ordinary sensibility, may create a nuisance, though such noise and vibration may result from the carrying on of a trade or business in a town or city. 20 Rul. Cas. Law, 445. The difference between a public nuisance and a private nuisance does not consist in any difference in the nature and character of the thing itself, and the proceeding may be criminal in form when the nuisance affects a considerable number of persons.

In *Davis* v. *Sawyer,* 133 Mass. 289, the court held that the ringing of a bell at an early hour in the morning for the purpose of arousing keepers of boarding-houses

where operatives in a mill live or for the purpose of arousing the operatives themselves was a nuisance. At page 290, the court said: "Noise which constitutes an annoyance to a person of ordinary sensibility to sound, such as materially to interfere with the ordinary comforts of life, and impair the reasonable enjoyment of his habitation, is a nuisance to him."

In *Reilley* v. *Curley,* 75 N. J. Eq. 57, the court says, at page 59: "The next question is whether noise alone may constitute such a nuisance as to subject the one creating the same to restraint in equity. That such is the case I am convinced from the authorities, not only in our state, but in many other jurisdictions.

"Of course, the character and volume of the noise and the time and duration of its occurrence, and the place where it occurs, and the surroundings thereof, are the important and determinative features."

The mere fact that the business conducted by the defendants is in itself lawful is not an excuse in law for the commission of a public nuisance. 2 Wharton Crim. Law (11th ed.), § 1767. A lawful business may be conducted in an unlawful manner. The lawful nature of the business is not a shield for unlawful acts committed in the conduct of that business. So it was held that a superintendent in charge of a milk and cream business, who permits and allows the employees in his charge and control to make noises by night and day by loading trucks, in cracking and breaking ice, and permits and allows them to use profane and indecent language, and who has authority to discharge and employ help and who has entertained the complaints of residents and undertaken to abate the alleged nuisance, may be convicted of committing a public nuisance. *People* v. *Weeks,* 172 App. Div. 117.

The lawful purpose of a defendant is not material. The question is whether he permits acts which consti-

**80** PEOPLE *v.* HESS.

Court of Gen. Sessions, N. Y. County, January, 1920. [Vol. 110.

tute a public nuisance as prohibited by the statute. So it was stated in the case of *People* v. *High Ground Dairy Co.,* 166 App. Div. 81, 82: " Whether the defendant conducted its lawful business with good or evil intent was immaterial. \* \* \* The purpose of the statute is to prevent the recurrence of the nuisance, not to punish, although punishment must be prescribed in order to make the statute effective. Then it is neither essential nor logical to consider the intent of the maker of the nuisance. If it were, the purpose of the statute would almost invariably be defeated in cases when the business was lawful, for how could it be shown that one would so conduct such business with the purpose of doing what the law forbids and punishes? "

Wharton, in his treatise on the criminal law, states: "As the object of the prosecution is to remove an injury to the public with which the intent of the defendant has nothing to do, his intent is irrelevant." Vol. 2 (11th ed.), § 1686, p. 1850. There is apparent confusion with respect to the use of the words " criminal intent " with reference to a public nuisance. In *People* v. *Eckerson,* 133 App. Div. 220, decided in 1909, in the prevailing opinion by Burr, J., it is stated that it must be shown that the act or omission was with criminal intent on the part of the defendant. In that opinion Gaynor, J., concurred but stated: " I concur, but not in what is said on the necessity of a ' criminal intent.' That bald phrase often serves to secure an acquittal on a false notion in the minds of the jury." And in a later opinion, in *People* v. *High Ground Dairy Co., supra,* decided in February, 1915, Justice Jenks, as presiding justice, writing the prevailing opinion says: " The defendant insists that there is no proof of criminal intent. None is necessary. The statute is silent and intent is not a necessary element of such crime."

And in January, 1915, Carr, J., writing for unanimous court, in which Jenks, P. J., was a member says: " The appellant urges further that the judgment was reached by ignoring the necessity of proving a criminal intent on the part of the defendant, and that, therefore, it was based upon a substantial error of law. What is meant by the phrase ' criminal intent ' within the scope of the definition of the crime of maintaining a public nuisance? It does not mean that one who is charged with the commission of that offense should be shown to have consciously and positively intended to interfere with the comfort and repose of ' any considerable number of persons.' His criminality is independent of any positive purpose of annoyance. It can arise as well from his very failure to think of anybody *but* himself, and, generally, public nuisances, whenever and wherever they exist, arise from just such self concentration. The acts involved here were so continuous and persistent as to indicate on the part of the defendant's employees a complete indifference to the rights of others and, as to the crime now under consideration, to establish a ' criminal intent ' within the meaning of the law." *People* v. *Borden's Condensed Milk Co., supra.* In other words, whether or not criminal intent is necessary depends upon whether or not you include in your definition of criminal intent the element of malice. The motive is immaterial. The doing of the act regardless of the rights of others is the criminal intent.

Moreover, it is no defense that the intent of the defendant in the conduct of his business is to benefit the community. A person who starts an enterprise voluntarily for his own benefit cannot if prosecuted for a nuisance which he commits in the conduct of such business excuse the nuisance on the ground that his

business is a benefit to the community. 2 Whart. Crim. Law (11th ed.), §§ 1682, 1787, and cases cited.

The doing of such an act as the ringing of a bell for such a period of time and in such surroundings and under such circumstances as to annoy, injure or endanger the comfort, repose or health of any considerable number of persons may constitute a public nuisance, and that regardless of the fact that the purpose of installing such bell and the use to which it is intended to be put is the detection of crime.

In *People* v. *Weeks, supra,* Jenks, P. J., referring to the caption of section 1530 of the Penal Law, " Maintaining Nuisance," which defines a public nuisance as a misdemeanor, quoting Holmes, J., in *Commonwealth* v. *Patterson,* 138 Mass. 498, 500, says: "A certain degree of permanence * * * is usually a part of the conception of a nuisance."

The ringing of a burglar alarm due to its being temporarily out of repair or due to actual alarm being given upon it, if promptly stopped might well not constitute a public nuisance. When the business itself is lawful the primary question is one of relative rights and the nature of the act and the surrounding circumstances in each case must therefore be examined.

The evidence before the grand jury established that one of the bells of the defendant corporation, of which the defendant Hess is president in charge, located on the outside at the tenth floor of an eleven story loft building, No. 26 West Seventeenth street, rang on the night in question without cessation for two hours, from nine until eleven; that among those disturbed were inmates of the New York Hospital, located at No. 8 West Sixteenth street. There was testimony that the bell could be heard at a distance of 720 feet, that it was heard distinctly at Seventh avenue and Seventeenth street, and that the sound re-echoed from the buildings

opposite. What caused the bell to start ringing does not appear in the evidence but it had gone off without anyone entering the building and continued to ring until the New York Hospital and the neighbors notified the police and the latter telephoned the defendant corporation, whose employee came at about eleven o'clock with the keys to the loft and stopped the bell. This was not an isolated case. The defendant Hess had been notified of many complaints concerning the long-continued ringing of the bells installed by his company and had said, with reference to his business, that it is a cheap substitute for a burglar alarm system; that he didn't have to maintain any wires like other systems or to ask the city authorities for permission to run wires under the street or to pay any rent for conduits for running wires. " Someone," he said, " is going to notify me that a bell is ringing and it will ring until someone notifies me unless one of my men happen to hear it."

The evidence before the grand jury is sufficient to establish a *prima facie* case of public nuisance.

The objection is made that the manner in which the hearing was conducted by the district attorney created an atmosphere prejudicial to the defendants. It has been held that this alone is not ground for dismissing an indictment. *People* v. *Grout,* 85 Misc. Rep. 570, 573. It is the duty of the district attorney to conduct the proceedings according to the rules of law. Section 256 of the Code of Criminal Procedure provides: " The grand jury can receive none but legal evidence." The district attorney, therefore, should offer none but legal evidence. Incompetent and irrelevant testimony was introduced in this case. The rule is well settled, however, that an indictment should not be dismissed merely on the ground that incompetent, irrelevant or immaterial evidence was given before the grand jury where

Surrogate's Court, Albany County, January, 1920. [Vol. 110.

there is sufficient legal evidence to support it. *People
v. Sexton,* 187 N. Y. 495, 511; *People* v. *Osborne,* 158
N. Y. Supp. 572; *People* v. *Grout,* 85 Misc. Rep. 570.
The court will examine the nature of the illegal evi-
dence and consider its effect. The general rule should
be modified by the proviso that the indictment may be
dismissed where it clearly appears that the illegal evi-
dence improperly influenced the minds of the grand
jurors.

The legal evidence in this case was ample to support
the indictment and the illegal evidence did not, in my
opinion, improperly influence the grand jury in its
finding.

Motion to dismiss the indictment denied.

Motion denied.