[Civ. No. 6273. Second Appellate District, Division Two.—January 21, 1930.]

THE PEOPLE, Appellant, v. A. H. SECCOMBE, Respondent.

E. J. Lickley, City Prosecutor, and Ford M. Jack and Vernon S. Gray, Deputies City Prosecutor, for Appellant.

Bailie, Turner & Lake and Albert E. Marks for Respondent.

BURNELL, J., *pro tem.*—This is an appeal from a judgment of dismissal following an order sustaining a demurrer to the complaint without leave to amend.

The purpose of the action was to obtain an injunction restraining the defendant from continuing to pursue the occupation of usurer. The complaint contains the following allegations: That the city attorney and city prosecutor of the city of Los Angeles bring the action as such on behalf of the People of the state of California; that the defendant has on two separate occasions been convicted of the misdemeanor of "demanding and receiving usury"; "that many other complaints have been made to plaintiff" charging the defendant with violation of the Usury Law (Stats. 1919, p. lxxxiii), and that "plaintiff has filed and prepared to file many criminal complaints" against defendant charging him with violations of the same law; that defendant conducts a money .loaning business and has violated and intends to continue to violate the Usury Law as a continuous course of conduct; that "many thousands" of the population of Los Angeles, which exceeds a million persons (latest estimates of the Chamber of Commerce are over

a million and a half), borrow money and do business with money lenders; that those doing business with the defendant "are persons of limited means and are necessitous borrowers," and are forced to pay him usury because of their great need for obtaining money; that unless restrained defendant "will carry out his said continuous course of conduct and will thereby not only injure persons so forced to pay usury to the said defendant, but will also cause a loss and detriment to the community and to the economic and financial well-being of said community, and also thereby cause a loss of income to the State of California and the city of Los Angeles, under its revenues, taxes and laws"; and that the People of the state of California "is without adequate remedy of law to prevent the defendant from carrying out and continuing said continuous course of conduct and from doing said unlawful acts" except by injunction.

It appears to have been the theory of the pleader and is the theory of the city prosecutor, whose signature is appended to the briefs filed on behalf of appellant, that sanction for the institution of the action is to be found in the last sentence of section 731 of the Code of Civil Procedure, reading as follows. "A civil action may be brought in the name of the people of the state of California to abate a public nuisance, as the same is defined in section thirty-four hundred and eighty of the Civil Code, by the district attorney of any county in which such nuisance exists, or by the city attorney of any town or city in which such nuisance exists, and each of such officers shall have concurrent right to bring such action for a public nuisance existing within a town or city, and such district attorney, or city attorney, of any county or city in which such nuisance exists must bring such action whenever directed by the board of supervisors of such county or whenever directed by the legislative authority of such town or city."

Section 3480 of the Civil Code defines a public nuisance as "one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal." A nuisance is "anything which is (a) injurious to health, or is (b) indecent or offensive to the senses, or (c) an obstruction to the free use

of property, or (d) unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway'' (Civ. Code, sec. 3479). We have interpolated the parenthesis inclosed letters in the code definition the better to set off and differentiate the various separate classes of conditions or acts any one of which constitutes a nuisance. It is very evident that if following the despicable calling of usurer constitutes a public nuisance as above defined it must be because such conduct constitutes ''an obstruction to the free use of property'' as set forth in clause (c). It could not by any stretch of the imagination be considered as covered by any other clause of the code definition. The complaint, however, contains no allegation of facts, as distinguished from conclusions of the pleader, which, being deemed true, would support a conclusion of law that the defendant's course of conduct constitutes an obstruction to the free use of the property either of the state or of ''an entire community or neighborhood, or any considerable number of persons.'' ██ It does plead that the defendant has committed two separate misdemeanors and alleges that he *intends* to commit further crimes of the same nature. This, however, is but an allegation of past and a conclusion as to future criminality. *Intention* is a mental process. ██ A statement of one's own intention may be one of fact regarding the present state of his mind as to his future conduct, but a statement as to another's intention can be but the conclusion of him who makes it as to the state of mind of that other. Thus in *Ellis Landing & Dock Co.* v. *Richmond,* 70 Cal. App. 720 [234 Pac. 336, 337], it was held that ''the mere conclusion of the pleader'' that the defendants threatened to do certain things, ''without the recital of any facts showing such intention, can add nothing to the complaint.'' To the same effect is *Hodge* v. *Alabama Water Co.*, 205 Ala. 472 [88 South. 585]. Here it is not even alleged that the defendant has threatened to, or made any statement that he intended to, continue in the future to violate the law as he had done in the past on the two occasions specified in the complaint. ██ The allegations as to complaints which have been made to ''plaintiff'' with respect to defendant's usurious conduct and as to the criminal complaints filed and prepared to be filed against him can of course add no weight to the plead-

ing, since as to offenses of which he has not been actually convicted he must be presumed innocent.

Criminal conduct may of course be coupled with the maintenance of a nuisance, as, for example, the maintenance of a factory giving forth noisome gases which not only offend the sense of smell of those residing in the vicinity, but also imperil their health in a district where the law prohibits and penalizes the maintenance of such establishments. But as a nuisance may exist without a concomitant crime, so may criminality exist without the criminal act or course of conduct constituting a nuisance as defined by the laws of this state. ■■ It follows that where the action is for abatement of a nuisance by injunction or otherwise, facts which bring the act or course of conduct within the definition of a nuisance must be pleaded, and it is not sufficient to allege merely that the defendant has committed and intends to commit additional criminal acts. ■■ The only attempt in the complaint before us to allege facts which would go to show that the course of law violation which it is averred the defendant *intends* to continue to pursue will obstruct the free use of property and thus amount to a nuisance is found in the statement ''that unless restrained by this court, defendant and his agents, servants and employees will carry out his said continuous course of conduct and will thereby not only injure persons so forced to pay usury to the said defendant, but will also cause a loss and detriment to the community and to the economic and financial well-being of said community, and also thereby cause a loss of income to the state of California and the city of Los Angeles, under its revenues, taxes and laws.'' The *manner* in which the persons forced to pay usury to the defendant will be injured or in which the free use of their property will be obstructed is not stated, nor are there any *facts* alleged from which a court could determine as a conclusion of law that defendant's continued violation of the Usury Law will cause a loss or detriment, by an obstruction of the free use of its property, to the community or a loss of income to the state or to the city. As to the latter, the income of both city and state is derived from taxation of property therein, and while the allegation of the defendant's usurious conduct might warrant the conclusion that some of the property of his victims has been or will be wrongfully ac-

quired by him, it is difficult to see in what way that circumstance is calculated to cause any loss of income to city or to state, since such property would be equally subject to taxation in whoever's hands it might be. A very similar allegation was contained in the complaint in *Ellis Landing etc. Co.* v. *Richmond,· supra,* in which the court affirmed a judgment for the defendant following an order sustaining a demurrer without leave to amend, it being there averred that unless the carrying out of an alleged void agreement by the officials of the city of Richmond be restrained "the income of said city will be reduced and the taxable burden of plaintiff will be increased to his irreparable injury and damage."

The pleading here is of a similar nature to that in *State* v. *Johnson,* 26 N. M. 20 [188 Pac. 1109, 1110], a case in which the state of New Mexico brought an action to enjoin the defendant from continuing the practice of medicine and osteopathy without a license as provided by law. The complaint averred that such illegal practice constituted a nuisance "and is dangerous, detrimental and injurious to the health of the inhabitants of the county of Bernalillo and state of New Mexico," but plead no facts showing in what way it was, or if continued would be, either dangerous, detrimental or injurious to the public health. It was held that this allegation was a mere conclusion of the pleader and not an averment of fact, and the judgment of the trial court sustaining a demurrer and dismissing the action was affirmed. Such an allegation is akin to one that the plaintiff will, unless an injunction be granted, suffer irreparable injury and that he has no adequate remedy at law, and is regarded as a mere conclusion of the pleader unless accompanied by a statement of facts from which the court can draw the conclusion which the pleader himself has stated (*Bishop* v. *Owens,* 5 Cal. App. 83 [89 Pac. 844]). ■ "The mere allegation that irreparable injury will result to the complainant unless protection is extended to him is not sufficient; the facts must be stated, that the court may see that the apprehensions of irreparable mischief are well founded" (*Carlisle* v. *Stevenson,* 3 Md. Ch. 499, quoted in *Mechanics' Foundry* v. *Ryall,* 75 Cal. 601 [17 Pac. 703]; *Torbit* v. *Warner,* (Mo.) 217 S. W. 40).

■ The greater part of appellant's brief is taken up by a discussion of the legal proposition that equity will not

withhold the remedy of injunctive relief merely because the acts constituting a nuisance are also of a criminal nature. There is no question of the correctness of this statement (*Pierce* v. *Stablemen's Union*, 156 Cal. 70 [103 Pac. 324]; *In re Wood*, 194 Cal. 49 [227 Pac. 908, 909]; *People* v. *Gold Run D. & M. Co.*, 66 Cal. 138 [56 Am. Rep. 80, 4 Pac. 1152]; *Weis* v. *Superior Court*, 30 Cal. App. 730 [159 Pac. 464]; *Herald* v. *Glendale Lodge*, 46 Cal. App. 325 [189 Pac. 329, 333]), but it must appear that the acts, condition of property or course of conduct complained of fall within the definition of a nuisance as laid down by our laws, and that the injury is, and if the wrong is persisted in will continue to be, of a tangible character, affecting (where property is involved) some designated property. This principle is demonstrated by the California cases relied on by appellant. Thus the cases of *People* v. *Truckee Lumber Co.*, 116 Cal. 397 [58 Am. St. Rep. 183, 39 L. R. A. 581, 48 Pac. 374], *People* v. *Stafford Packing Co.*, 193 Cal. 719 [227 Pac. 485], and *People* v. *Monterey Fish Products Co.*, 195 Cal. 548 [38 A. L. R. 1186, 234 Pac. 398], involve acts which in addition to being forbidden by law amounted to obstruction to the free use of property of the state, to wit, fish within the territorial waters of the state, title to which is vested in the state and by it held in trust for the benefit of the inhabitants thereof.

*People* v. *Gold Run etc. Co., supra,* involved the dumping of tailings from mining operations into the American and Sacramento Rivers, thereby shallowing and widening them, increasing the liability of overflow with consequent danger of disastrous floods, and affecting their navigability, a clear case of that type of nuisance within the purview of clause (d) of section 3479 of the Civil Code and constituting as well an obstruction of the free use of the property, a navigable river, of the state. *Pierce* v. *Stablemen's Union, supra,* had to do with an actual interference with the plaintiff's business, accompanied by threats of continued trespasses upon his property. *In re Wood, supra,* was a case in which the petitioner sought release on *habeas corpus* from imprisonment for contempt consisting of the violation of an injunction restraining him and other members of the Industrial Workers of the World from "further conspiring with each other to carry out, and from carrying out, or attempt-

ing to carry out, their conspiracy to injure, destroy and damage property in the state of California, and to take over and assume possession of the industries and properties in said state," and from circulating printed matter advocating the destruction of property. The court noted that among the aims of petitioner's organization, for which the affidavits on injunction showed that he had been busily recruiting members, was "the overthrow of organized government by unlawful means, among which are sabotage, arson, and other crimes of violence and oppression." In *Herald* v. *Glendale Lodge, supra*, the right of a member of a lodge of Elks to have the lodge enjoined from serving beer in violation of a city ordinance was upheld upon the theory that such criminal conduct would result in prosecutions as a result of which the lodge would be fined and put to expense for legal services, "and that such fines, costs and expenses will fall upon the membership of the club, or at least be paid from money in which the members have an interest." The court there said: "This procedure is not against the infraction of the law in itself, but against the infliction upon the club and its members of the pecuniary loss, as well, perhaps, as social odium affecting the material prosperity of the club, growing out of the unlawful method adopted by the managers in carrying on its business."

But where the acts or conduct complained of constitute merely a crime or series of crimes, the rule as laid down in section 3369 of the Civil Code applies: "Neither specific nor preventive relief can be granted to enforce a penal law, except in the case of a nuisance." This rule is reiterated in the cases we have just mentioned. As was well said in *State* v. *Ehrlick*, 65 W. Va. 700 [23 L. R. A. (N. S.) 691, 64 S. E. 935, 939]: "It is not the criminality of the act that gives jurisdiction in equity, but the deprivation of personal and property rights interfered with, injured, destroyed or taken away by the unlawful act. For the mere vindication of the criminal law and the enforcement of the public policy of the state, let it be founded upon moral or other considerations, the legal remedy by indictment and prosecution is fully adequate and peculiarly appropriate."

The judgment is affirmed.

Craig, Acting P. J., and Thompson (Ira F.), J., concurred.