**103 P.2d 273**

**STATE ex rel. MARRON, Dist. Atty., v. COMPERE.**

No. 4525.

Supreme Court of New Mexico.

May 29, 1940.

Rehearing Denied June 20, 1940.

Owen B. Marron, Dist. Atty., and Donald B. Moses, Asst. Dist. Atty., both of Albuquerque, for appellant.

Rodey & Dickason, of Albuquerque, for appellee.

SADLER, Justice.

We are asked to decide whether the trial court properly sustained a demurrer to the plaintiff's complaint seeking to enjoin defendant from engaging in the practice of medicine. The plaintiff stood upon the ruling and suffered dismissal of its complaint from which judgment it prosecutes this appeal. The suit is one by the state on the relation of Owen B. Marron, as district attorney of the second judicial district.

Allegations of the complaint as amended, material to the test invoked by the demurrer, are that defendant, on or about June 1, 1933, opened an office in Bernalillo County, New Mexico, and at all times since said date has advertised and held himself out as competent to treat the sick and afflicted; to investigate and diagnose physical and mental ailments and diseases for compensation; and that he has never at any time presented himself before the State Board of Medical Examiners for an examination as to his moral and professional qualifications, character and ability, in that behalf, and has never been licensed to practice medicine as required by law.

Additional material allegations in the language of the complaint are as follows:

"That said defendant for the use of many persons on diverse occasions has suggested, recommended, prescribed and directed drugs, medicines, appliances and other agencies, material and not material, for the cure, relief and palliation of ailments and diseases of the mind and body

of said persons, and that he has offered to investigate and diagnose physical or mental ailments of such persons and that he has charged and received therefor compensation from such persons. * * *

"That the defendant is unskillful and uninformed in the practice of medicine, and does not possess the moral and professional qualifications required therefor; and that because he is so uninformed and unskillful and without moral character and professional ability, the treatment by him of persons suffering from physical and mental ailments and diseases endangers their lives, health and welfare; and that his said actions endanger the health of the public and constitute a public and continuing nuisance. * * *

"That by reason of the foregoing facts and conditions, and persistent practice of medicine by the defendant, he has become a public nuisance, detrimental to the public welfare, and dangerous to the public health.

"That defendant threatens to continue the practices aforesaid in the future.

"That there are at this time diverse persons whom the defendant is treating for various illnesses and sicknesses and that immediate and irreparable damage will be caused to such persons and the general public unless the defendant is temporarily restrained from treating the said persons pending the hearing of an order to show cause why a preliminary injunction should not be issued herein, and it is further alleged that as this action is being instigated by the State of New Mexico there is good cause for waiving the issuance of security usually required before issuance of temporary restraining orders.

"That the remedy at law is inadequate, and if the defendant is not restrained from holding himself out to the public as being competent to treat the sick or afflicted and to diagnose physical or mental ailments or diseases, and to suggest, recommend, prescribe or direct the use of drugs, medicines, appliances or other remedies, material or not material, for the cure, relief and palliation of ailments and diseases, and from diagnosing physical or mental ailments or diseases, and from treating the sick and afflicted, and prescribing for their use drugs, medicines, appliances and other remedies, material or not material, for the cure, relief or palliation of diseases, his conduct, as aforesaid, will result in an irreparable injury to the health of the public."

The defendant's demurrer to plaintiff's amended complaint, challenging its sufficiency as stating a cause of action and which was sustained by the trial court, is set forth in five separate paragraphs, as follows:

"(a) That it appears upon the face of said complaint that the same lacks equity, in that the plaintiff has an adequate remedy at law by a prosecution under N.M.S. A. (1929) § 110-110.

"(b) That it appears upon the face of the complaint that the same lacks equity, in that this proceeding is designed to ob-

tain injunctive relief, without statutory authority, against the mere violation of a penal statute.

"(c) That it appears upon the face of the complaint that the same lacks equity since the purpose of .this proceeding is to deprive the demurrant of his right to jury trial and to deprive the demurrant of due· process of law and the. equal protection of the laws as guaranteed by the 14th Amendment of the Constitution of the United States and by Article 2, sections 4, 12, 14 and 18 of the Constitution of the State of New Mexico.

"(d) That it appears from the face of this complaint that no facts are therein .alleged sufficient to show that the. demurrant's conduct constitutes a nuisance, and that there is no ground for legal or equitable relief in this proceeding.

. "(e) That it appears from the face of ·this complaint that the sole grounds upon .which the defendant's conduct is alleged to be a nuisance is that the same is allegedly unlicensed and unlawful and subject to criminal prosecution. That these facts have been specifically held insufficient to constitute a ground for equitable relief in a proceeding of this present kind."

The defendant insists the trial court's action is fully sustained .by the decision of this court in State v.· Johnson, 26 N.M. 20, 188 P. 1109, 1110. If so, we may make quick disposition of the appeal by so stating and direct an affirmance with that case·· as a precedent.· .The effect .of the decision on the one at bar is therefore a matter of initial concern.

The suit was one by the State to enjoin defendant from practicing osteopathy and medicine without a license. All that· was charged in a complaint of two counts (the first relating to osteopathy and the second to medicine) was that defendant was practicing without a license, "and that such practice constitutes a nuisance, and is dangerous, detrimental, and injurious to the health of the inhabitants of the county of Bernalillo and state of New Mexico". The defendant demurred upon the ground the complaint failed to state a cause of action. This court approved the trial court's action in sustaining the demurrer. We said: "Our Code provides that complaints must contain 'a statement of the facts constituting the cause of action, .in ordinary and concise language.' Section .4104, Codification 1915. Examining the complaint, we find but one fact stated, viz. the practice of osteopathy or medicine without a license. The allegations that such practice is a nuisance, or is detrimental, dangerous, and injurious to the public health, are merely conclusions of the pleader. Practicing osteopathy or medicine without a license is not a nuisance per se."

The case is not decisive. We do .not recede from the position there taken ·in holding . the complaint before us not subject to the same objection which controlled the decision in the Johnson. case. If the State had here alleged no. more than

the practice of medicine without a license and had merely pleaded the conclusion that this was dangerous and a nuisance, we should feel impelled to render a like decision as in that case. But the State alleges much more. While it is true that it does allege the defendant is unlicensed, it also sets forth that he "is unskillful and uninformed in the practice of medicine, and does not possess the moral and professional qualifications required" for such practice; that because he is uninformed upon the subject of medicine and because of his lack of skill and his want of moral and professional qualifications, in prescribing drugs and treating physical and mental ailments of the people, he endangers the health and lives of the public; and that he threatens to continue his acts. The demurrer admits the truth of what is alleged. The argument that the allegations of the complaint amount to no more than that because defendant is unlicensed he is uninformed and unskillful and so forth, thereby placing the case in a class with the Johnson decision, must fail. Here there are sufficient allegations of ultimate facts, absent in the Johnson case, to let the complaint by the demurrer, unless for other reasons set forth in the latter, the demurrer should have been sustained. We shall now examine it to see if such be the case.

Briefly summarized, defendant's position is that the complaint is fatally defective because (a) the penal provisions (1929 Comp., § 110-110) of the Medical Practice Act afford an adequate remedy; (b) an injunction would violate defendant's constitutional guaranty of a jury trial; and, finally (c) that even though he does all the thing alleged, such conduct does not constitute a public nuisance.

There can be no doubt but that the state has authority to punish one who engages in the practice of medicine without a license. Section 110-110, supra. The penalty is a fine not to exceed $100 or imprisonment in the county jail not to exceed ninety days, or both, within the discretion of the court. Is this remedy exclusive and is it adequate? We deem it not exclusive nor is it always adequate. Power to abate a public nuisance is an old head of equity jurisdiction. True, there was a time when courts of equity denied their right to enjoin an act of a criminal nature, or an offense against the public, even if amounting to a public nuisance, which did not touch the enjoyment of property. Chancellor Kent in Attorney General v. Utica Ins. Co., 2 Johns. Ch., N.Y., 371. Even as late as the decision in the case of In re Debs, 158 U.S. 564, 15 S.Ct. 900, 906, 39 L.Ed. 1092, an injury to property rights or to rights of a pecuniary nature is stressed as a basis for interference by injunction in cases of public nuisance. However, even in the Debs case, the court, after finding the presence of a property right in the government, declined to rest its decision on that fact alone, saying: "We do not care to place our decision upon this ground alone."

But that injunctive relief may be employed to protect the public health,

morals, safety and welfare from irreparable injury by a public nuisance, seems now well established. Nor will the fact that the acts constituting the nuisance are punishable criminally deprive equity of its power to enjoin in a proper case. Equity acts in such cases, not because the acts are criminal, but rather in spite of that fact. 20 R.C.L. 475, § 89; 32 C.J. 279, § 442; State ex rel. La Prade v. Smith, 43 Ariz. 131, 29 P.2d 718, 92 A.L.R. 168; People ex rel. Bennett v. Laman, 277 N.Y. 368, 14 N.E.2d 439; Rochester v. Gutberlett, 211 N.Y. 309, 105 N.E. 548, L.R.A. 1915D, 209, Ann.Cas.1915C, 483; Kentucky State Board of Dental Examiners v. Payne, 213 Ky. 382, 281 S.W. 188; Commonwealth v. Brown, 239 Ky. 197, 39 S.W.2d 223; see, also, annotation in 81 A.L.R. 297.

In People ex rel. Bennett v. Laman, supra, the Court of Appeals of New York reversed the Appellate Division of the Supreme Court of that state in the latter's holding that the People's complaint failed to state a cause of action in a suit to enjoin the unlawful practice of medicine. The Court of Appeals held that the complaint alleged facts which, if proven upon the trial, would warrant the issuance of an injunction. Among other things, it said [277 N.Y. 368, 14 N.E.2d 442]:

"That a court of equity will not undertake the enforcement of the criminal law, and will not enjoin the commission of a crime, is a principle of equity jurisprudence that is settled beyond any question. There can equally be no doubt that the criminal nature of an act will not deprive equity of the jurisdiction that would otherwise attach. Cranford v. Tyrrell, 128 N.Y. 341, 28 N.E. 514; Davis v. Zimmerman, 91 Hun 489, 492, 36 N.Y.S. 303; Matter of Debs, 158 U.S. 564, 593, 15 S. Ct. 900, 39 L.Ed. 1092. Whether or not the act sought to be enjoined is a crime, is immaterial. Equity does not seek to enjoin it simply because it is a crime; it seeks to protect some proper interest. If the interest sought to be protected is one of which equity will take cognizance, it will not refuse to take jurisdiction on the ground that the act which invades that interest is punishable by the penal statutes of the state. Equity does not pretend to punish the perpetrator for the act; it attempts to protect the right of the party (here the People) seeking relief, and to prevent the performance of the act or acts, which here may injure many. * * *

"Although invasion of property rights or pecuniary interests is emphasized in some of the earlier cases as a basis for equitable interference, there appeared later a recognition that public health, morals, safety, and welfare of the community equally required protection from irreparable injury.

"In Stead v. Fortner, 255 Ill. 468, 478, 99 N.E. 680, 684, the court said: 'The maintenance of the public health, morals, safety and welfare is on a plane above mere pecuniary damage although not sus-

ceptible of measurement in money, and to say that a court of equity may not enjoin a public nuisance because property rights are not involved, would be to say that the State is unable to enforce the law or protect its citizens from public wrongs.' * * *

"Section 1251 of the Education Law provides that: 'No person shall practice medicine * * * unless licensed by the department and registered as required by this article.' Provision is then made for the admission to examinations, the subjects of examinations, the licensing and registration of those found qualified to practice. The criminal penalties are then prescribed in section 1263, quoted before. The prohibition against the unlawful practice of medicine is made without relation to the imposition of a penalty. Equity is not concerned with the criminal feature of defendant's acts. Another section of the statute absolutely prohibits such unlawful practice. These provisions are designed to protect the people from the ministrations of incompetent, incapable, ignorant persons, and to avoid the consequent harm to their health and physical well-being. *The interest of the state, the imminence of the danger, and the irreparable character of the injury are here fully apparent. A court of equity is not powerless to lend its assistance.*" (Italics ours.)

State ex rel. La Prade v. Smith, supra, is a case very much like the present, decided lately by the Supreme Court of Arizona. In sustaining the state's right to enjoin under the facts alleged, to which a demurrer had been interposed, the court said [43 Ariz. 131, 29 P.2d 720, 92 A.L.R. 168]:

"The difficult question, and the one upon which the courts seem to be seriously divided, is whether the court can or should employ its equity powers to prevent a person from committing a crime for which the Legislature has prescribed a punishment and thereby deprive the defendant of his constitutional right to a trial by jury. The general rule is that the courts will not enjoin one from committing a crime. Bisbee v. Arizona Ins. Agency, 14 Ariz. 313, 127 P. 722. It has been thought that, the Legislature having denounced certain things or conduct as criminal and fixed the punishment therefor, the proper tribunal for the trial of a violation thereof is the criminal court under regular criminal procedure. Injunctive relief is not intended as a substitute for nor as an aid to the criminal process. Fundamentally it is used to prevent the invasion, injury, or destruction of property or property rights. In affording relief in such cases it may incidentally enjoin the commission of a crime, but, if so, this is aside from its purpose and is no objection or hindrance to its use.

"But there are some exceptions to this rule. It is generally held that an injunction will be granted to restrain acts amounting to a public nuisance if they affect the civil or property rights or privileges of the public or the public health, whether such acts be denounced as crimes or not. 20 R.C.L. 475, § 89; 32 C.J. 279, § 442. * * *

"One of the principal functions of government is the protection of the health of the citizen, and to that end the Legislature, under the police power, may adopt any reasonable rules and regulations to prevent the spread of communicable diseases and for the cure or alleviation of the sick and injured. It is by reason of its solicitude for the public health and welfare that it has passed the law requiring a certain standard of learning and training of those who undertake to preserve or repair that most delicate mechanism—the human body. It is obvious that one who knows little or nothing of the human body and its reactions is unable intelligently and wisely to diagnosticate or prognosticate human ills, or to adopt sanitary means to prevent their spread or to effect their cure.

"If in fact the defendant is unskillful and uninformed, as alleged, and notwithstanding is daily treating people for their ills, it is not only probable but very likely that he is injuring the health of those he treats rather than helping them. *In other words, if the allegations concerning his unpreparedness for the practice of medicine are true, the reasonable deduction therefrom is that his acts are injurious to health and also a menace to life."* (Italics ours.)

The cases and texts we have cited recognize that there is a division of authority upon the question under review. It would be a fruitless task to attempt to analyze and classify the decisions in view of the illuminating exposition of them to be found in People v. Laman, State v. Smith and other cases cited supra. The leading cases in which injunctive relief as an appropriate remedy is denied are People ex rel. Shepardson v. Universal Chiropractors' Ass'n, 302 Ill. 228, 134 N.E. 4; Dean v. State, 151 Ga. 371, 106 S.E. 792, 40 A.L.R. 1132; Redmond v. State ex rel. Attorney General, 152 Miss. 54, 118 So. 360; State v. Maltby, 108 Neb. 578, 188 N.W. 175.

We prefer to follow the decisions holding equitable relief proper if facts similar to those here alleged are proved. This is not to say that in a trial upon the facts, the mere showing of illegal practice warrants injunction. Nevertheless, if carried on from day to day among the people generally by one unskilled in and ignorant of its fundamentals, who prescribes drugs, dangerous as well as harmless, and directs treatment for all manner of ills, physical or mental, which the flesh is heir to, it requires little imagination to foresee the most serious consequences to the public thus served. The health and lives of the people of a whole community become jeopardized. The practice of such a person falls easily under the definition of a public nuisance. In Stamm v. City of Albuquerque, 10 N.M. 491, 505, 62 P. 973, it was taken for granted by the territorial court that anything menacing the health of the public generally was a public nuisance. Where the facts are alleged as strongly as in the case at bar, it is better, we think, that the court hear the evidence and upon it grant or deny relief, than to declare as a matter of law that such conduct does not amount to a public nuisance. We think it does.

Defendant endeavors to distinguish the Arizona case of State v. Smith, supra, upon the ground that a local statute defines a public nuisance as "anything which is injurious to health * * * so as to interfere with the comfortable enjoyment of life or property by an entire community or neighborhood, or by any considerable number of persons * * *." Rev.Code Ariz. 1928, § 4693. This fact can scarcely serve as a ground of distinction. What the statute defines as a public nuisance would be held one without it wherever the common law prevails upon the subject. The statute is merely declaratory of the common law. People v. Hess, 110 Misc. 76, 179 N.Y.S. 734.

It is also urged upon us that because a provision of the act governing dental practice requires one conviction before injunction against unlawful practice (1929 Comp., § 37-113), a legislative policy not to have injunction against the unlawful practice of medicine is indicated. This is transparent reasoning. If it be true, as we hold, that power to abate a public nuisance is an ancient head of equity jurisdiction, and that any practice or condition that menaces the lives, the health and the welfare of a considerable number of the people in a given community constitutes a public nuisance, as is now generally agreed, then it would be more correct to say that in failing to interpose the same condition to injunctive relief against the illegal practice of medicine as it did in reference to the illegal practice of dentistry, the legislature has evinced an unmistakable purpose to leave equity courts unfettered in their power to abate as a public nuisance what is unquestionably the more dangerous practice.

If equity lacked the power anciently to abate a public nuisance, the want of legislative authority to do so would be fatal. But possessing the power, as it unquestionably does, the legislature does not by imposing a condition to the granting of injunctive relief in respect to one practice or course of conduct strike down a jurisdiction anciently possessed as to others.

That our legislature does not entertain the solicitude urged upon us by defendant against injunctive relief where the thing enjoined is also a penal violation is demonstrated in several statutory enactments. Section 37-113, just mentioned, is one of them. Sections 35-3615 to 35-3619 authorize abatement by injunction as a common nuisance of houses of prostitution and assignation, the operation or maintenance of which is declared a crime and made punishable both by fine and imprisonment under sections 35-3914 to 35-3919. See, also, 1929 Comp., § 57-302, as to abatement as a public nuisance of unlawfully enclosed parks or bodies of water in violation of the Game and Fish laws; §§ 72-108 and 72-109 (repealed by L.1933, c. 159, § 23) declaring a common nuisance any place where intoxicating beverages are sold or kept and providing for injunction proceedings to abate same; § 90-3410, authorizing towns and villages by ordinance to prevent injury and annoyance, within the corporate limits, "from anything dangerous, offensive, or

unhealthful or indecent, *and cause any nuisance to be abated*". (Italics ours.) No doubt there are other statutory provisions along the same line. Enough have been cited to demonstrate that the legislature is not averse to confirming in equity its ancient power to enjoin a public nuisance, even though in doing so it may incidentally restrain the violation of a penal provision. Cf. Town of Gallup v. Constant, 36 N.M. 211, 11 P.2d 962.

In People v. Laman, supra, the New York Court of Appeals cited numerous statutory provisions by which injunction was authorized, as rebutting a contention similar to that here made that these statutory measures marked the boundary of equity's jurisdiction, where the thing sought to be enjoined was punishable criminally. The court said: "It may be urged that the enactment of these statutes indicates a policy of permitting injunctions to restrain violation of statute to issue only in those cases where specific provision has been made. It is clear, however, that the policy of the state is to make the remedy more available, not to restrict it."

The awarding of injunctive relief works no deprivation of defendant's constitutional guaranty of a jury trial. If equity anciently had jurisdiction to abate a public nuisance, then the defendant was not entitled to a jury in such cases. Our Const., Art. 2, § 12, provides: "The right of trial by jury as it has heretofore existed shall be secured to all and remain inviolate."

In Rochester v. Gutberlett, 211 N.Y. 309, 105 N.E. 548, 551, L.R.A.1915D, 209, Ann. Cas.1915C, 483, meeting a similar contention, the court said:

"As equity has jurisdiction of the action to restrain the defendant from violating the ordinance, he has no constitutional right to a trial of the issues by a jury. The constitutional provision relating to a trial by jury is:

" 'The trial by jury in all cases in which it has been heretofore used shall remain inviolate forever.' * * *

"It had not been theretofore used in chancery."

See, also, State ex rel. La Prade v. Smith, supra; Cf. State v. Fray, 214 Iowa 53, 241 N.W. 663, 81 A.L.R. 286; Board of Medical Examiners v. Blair, 57 Utah 516, 196 P. 221.

We think the trial court erred in not allowing the state to present evidence in support of the facts alleged. If established by competent evidence, these facts undoubtedly would present the case of a public nuisance and authorize the injunction prayed. The judgment of the district court will therefore be reversed and the cause remanded with directions to overrule defendant's demurrer.

It is so ordered.

BICKLEY, C. J., and BRICE, ZINN, and MABRY, JJ., concur.