[S. F. No. 16414. In Bank.—Nov. 1, 1941.]

THE PEOPLE, Appellant, v. EDDIE LIM, Respondent.

874

Earl Warren, Attorney General, Warren Olney and Herbert E. Wenig, Deputies Attorney General, and Anthony Brazil, District Attorney, for Appellant.

Harry L. Noland, James M. Hanley and Herbert Chamberlin for Respondent.

GIBSON, C. J.—The District Attorney of Monterey County commenced this action on behalf of the People of the State of California to restrain defendants from continuing the operation of a gambling establishment in the city of Monterey. The complaint set forth the manner in which the various games were played and alleged that the operation of this gambling house constituted a public nuisance by encouraging idle and dissolute habits, by disturbing the public peace and by corrupting the public morals. It was further alleged that previous attempts to eradicate this evil by prosecutions under the penal laws had proven ineffective and that the aid of equity was necessary to accomplish its suppression. A preliminary injunction was asked to restrain defendants from conducting and operating gambling games pending a trial of the action. Defendants interposed both general and special demurrers. The trial court sustained the demurrers and denied plaintiff's motion for a temporary injunction.

After plaintiff's refusal to amend the complaint, the court entered its judgment in favor of defendants.

Upon this appeal it is contended in behalf of the people that the complaint states a proper cause of action and that it was error on the part of the trial court to sustain the general demurrer. The authority of a district attorney to bring such an action is found in the Code of Civil Procedure, section 731, which provides: "A civil action may be brought in the name of the people of the State of California to abate a public nuisance, as the same is defined in section thirty-four hundred and eighty of the Civil Code, by the district attorney of any county in which such nuisance exists . . . " Civil Code, section 3480 provides: "A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal." The definition of "nuisance," as the term is used in section 3480, is found in the provisions of the preceding section, Civil Code, section 3479: "Anything which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property . . . is a nuisance." It is stated in the allegations of the complaint that the action was instituted under statutory provisions. Thus, it is alleged that the gambling house operated by defendants constitutes a public nuisance "for the reason that it tends to and does in fact debauch and corrupt the public morals, encourage idle and dissolute habits, draws together great numbers of disorderly persons, disturbs the public peace, brings together idle persons and cultivates dissolute habits among them, creates traffic and fire hazards, and is thereby injurious to health, indecent and offensive to the senses and impairs the free enjoyment of life and property."

Although this proceeding purports to have been brought under the code provisions governing such actions, the plaintiff upon this appeal relies rather upon the theory that the statutory definition of "public nuisance" is not intended to be exclusive and that gaming houses, which were recognized as public nuisances at common law, are inherently public nuisances apart from the provisions of our statute. Plaintiff cites those statutes which provide that the common law must be given effect as the rule of decision where not repug-

nant to or inconsistent with the Constitution or laws of the state. (Pol. Code, sec. 4468; Civil Code, sec. 5.) Thus, it is said, a gambling house constitutes an inherent public nuisance in this state and equity will enjoin such a public nuisance in an action brought on behalf of the people. Defendants argue, however, that the authority conferred upon a district attorney to bring such an action in equity extends only to those nuisances specified by statute and that their activities are not within the terms of our statute.

It must be conceded that the cases cited by plaintiff, as well as many others, demonstrate that a gambling house constituted a public nuisance at common law for the purposes of a criminal prosecution. (*Rex* v. *Rogier,* 1 B. & C. 272; *Rex* v. *Taylor,* 3 B. & C. 502; *Scott* v. *Courtney,* 7 Nev. 419; *Ehrlick* v. *Commonwealth,* 125 Ky. 742 [102 S. W. 289, 290] ; 1 Wood, Nuisances (3d ed. 1893), sec. 45, p. 63 et seq. See also *Bryant* v. *Mead,* 1 Cal. 441, 442; *People* v. *Jackson,* 3 Denio (N. Y.) 101 [45 Am. Dec. 449] ; *State* v. *Vaughn,* 81 Ark. 117 [98 S. W. 685, 118 Am. St. Rep. 29, 11 Ann. Cas. 277, 7 L. R. A. (N. S.) 899] ; 1 Bishop, Criminal Law (9th ed., 1923), sec. 1135, p. 835; Russell, Crimes (6th ed. 1896), p. 741; 46 C. J. 701.) While these cases indicate that gambling houses were recognized as public nuisances in criminal prosecutions, they do not hold that an equity action on behalf of the state might be maintained at common law to enjoin the operation of a gambling house. On the contrary, it is clear that the jurisdiction of equity was very sparingly exercised on behalf of the sovereign to enjoin public nuisances. The attitude of the early English cases is expressed by Chancellor Kent in a leading case: ''I know that the Court is in the practice of restraining private nuisances to property, and of quieting persons in the enjoyment of private right; but it is an extremely rare case, and may be considered, if it ever happened, as an anomaly, for a Court of equity to interfere at all, and much less preliminarily, by injunction, to put down a *public* nuisance which did not violate the rights of property, but only contravened . the general policy.'' (*Attorney-General* v. *Utica Insurance Co.,* 2 Johns. Ch. (N. Y.) 371, 380.) The authorities support the conclusion that this statement accurately represents the attitude of the earlier courts of equity where the sovereign sought injunctions against public nuisances. (*People* v. *Davidson,* 30 Cal. 379,

387; *State* v. *Vaughn, supra,* p. 689; *State* v. *Ehrlick,* 65 W. Va. 700 [64 S. E. 935, 937, 23 L. R. A. (N. S.) 691]; *State ex rel. Cir. Atty.* v. *Uhrig,* 14 Mo. App. 413; *People* v. *Condon,* 102 Ill. App. 449; *In re Debs,* 158 U. S. 564, 592 [15 Sup. Ct. 900, 39 L. Ed. 1092]; McClintock, Equity (1936), sec. 158, p. 284.) The common law recognized various types of wrongful activity as indictable public nuisances, including such miscellaneous acts as eavesdropping, being a common scold and maintaining for hire a place of amusement which served no useful purpose. (See 1 Wood, Nuisances, pp. 37, 60, 68, 72.) The kinds of public nuisance at common law, however, where injunctions were granted on behalf of the sovereign included only those cases of public nuisance in which the sovereign's rights were given the same protection that would have been given to the rights of a private person. An action on behalf of the state, therefore, to enjoin activity which violates general concepts of public policy finds no basis in the doctrines of the common law.

It has been recognized that the tendency to utilize the equity injunction as a means of enforcing public policy is a relatively recent development in the law. (Mack, "Revival of Criminal Equity", (1903) 16 Harv. L. Rev. 389, 392; (1913) 8 Ill. L. Rev. 19; McClintock, *supra,* p. 286.) Courts have held that public and social interests, as well as the rights of property, are entitled to the protection of equity. (Cf. *People* v. *Laman,* 277 N. Y. 368 [14 N. E. (2d) 439, 443]; *State* v. *Compere,* 44 N. M. 414 [103 Pac. (2d) 273, 276]; (1924) 13 Cal. L. Rev. 63.) This development has resulted in a continuous expansion of the field of public nuisances in which equitable relief is available at the request of the state. It has been held, for example, that the legislature may properly define the term "public nuisance" for the purposes of an equity injunction so as to include activity which was not a nuisance at common law or activity which offends concepts of public policy even though no rights of property are involved. (*Mugler* v. *Kansas,* 123 U. S. 623 [8 Sup. Ct. 273, 31 L. Ed. 205]; and *People* v. *Barbiere,* 33 Cal. App. 770 [166 Pac. 812]; see, 28 Am. Jur. 338, 5 A. L. R. 1474; 22 A. L. R. 542; 75 A. L. R. 1298.) Where a particular activity, such as gambling or horse-racing, has been held to come within the language of a statute defining the term "public nuisance" for the purposes of equity juris-

diction on behalf of the state, courts have granted injunctions, or indicated that they would grant them, even though the acts were also criminal. (*State* v. *Robb & Rowley, United,* (Tex. Civ. App.) 118 S. W. (2d) 917; *Pompano Horse Club* v. *State,* 93 Fla. 415 [111 So. 801, 809, 810, 52 A. L. R. 51]; *Commonwealth* v. *McGovern,* 116 Ky. 212 [75 S. W. 261, 66 L. R. A. 280]; *Carleton* v. *Rugg,* 149 Mass. 550 [22 N. E. 55, 14 Am. St. Rep. 446, 5 L. R. A. 193]; *Jones* v. *State,* 38 Okla. 218 [132 Pac. 319, Ann. Cas. 1915C, 1031, 44 L. R. A. (N. S.) 161].) Upon at least two occasions the legislature of this state has passed statutes authorizing an action in equity to enjoin particular activity contrary to the public policy as a "public nuisance." Thus, houses of prostitution and houses where narcotics are illegally sold may be enjoined in an action brought by the district attorney of the county in which they are located. (Stats. 1913, p. 20; Deering's General Laws (1937), Act 6161; Stats. 1925, p. 532; Health & Safety Code (1939), sec. 11781.)

It must be admitted, however, that the authorities are divided as to whether the expansion of the field of public nuisances in which equity will grant injunctions must be accomplished by an act of the legislature. (See 40 A. L. R. 1145; 91 A. L. R. 315.) Some courts have attempted by judicial action alone to define "public nuisance" very broadly in order to grant injunctions on behalf of the state. Thus, it has been said that any place where a public statute is continuously flouted constitutes a public nuisance which may be enjoined by the state. (*State ex rel. Vance* v. *Crawford,* 28 Kan. 726, 733 [42 Am. Rep. 182]; 5 Pomeroy, Equity Jurisprudence (1919), p. 4296.) Other courts have flatly stated that a particular form of activity, such as bullfighting, is so objectionable as to constitute a public nuisance for the purposes of an equity injunction without the aid of a statute. (*State ex rel. Atty-Gen.* v. *Canty,* 207 Mo. 439 [105 S. W. 1078, 123 Am. St. Rep. 393, 13 Ann. Cas. 787, 15 L. R. A. (N. S.) 747]; cf. *Stead* v. *Fortner,* 255 Ill. 468 [99 N. E. 680], criticized in 8 Ill. L. Rev. 19.) The courts of this state, however, have refused to sanction the granting of injunctions on behalf of the state merely by a judicial extension of the definition of "public nuisance." The case of *In re Wood,* 194 Cal. 49 [227 Pac. 908], which has been severely criticized (see, Chaffee, Free Speech in the United

States (1941), p. 336, et seq.; (1924) 13 Cal. L. Rev. 63; (1925) 73 U. of Pa. L. Rev. 185), held only that the injunction granted was not void even though conceivably erroneous. This was so because the conspiracy there involved could be considered a public nuisance as a threatened impairment of the free use of property of the citizens of the state. Similarly, in *Weis* v. *Superior Court,* 30 Cal. App. 730 [159 Pac. 464], it was held that the District Attorney of San Diego County was authorized, under Code of Civil Procedure, section 731, to enjoin the performance of a public exhibition which was shown to have been indecent, and thus within the statutory definition of public nuisance in Civil Code, section 3479. In *People* v. *Seccombe,* 103 Cal. App. 306 [284 Pac. 725], however, the court refused to permit the maintenance of a suit in equity on behalf of the state to restrain defendant's continued practice of usury. It was held that, though reprehensible, the practice of usury could not be brought within any of the sections of the statute defining public nuisances. The courts have thus refused to grant injunctions on behalf of the state except where the objectionable activity can be brought within the terms of the statutory definition of public nuisance. Where the legislature has felt that the summary power of equity was required to control activity contrary to public policy, it has enacted statutes specifying that such activity constitutes a public nuisance which may be enjoined in an action brought on behalf of the state.  ■  We think the proper rule, therefore, and the one to which this state is committed is expressed in the following language from *State* v. *Ehrlick, supra*: "It is also competent for the Legislature, within the constitutional limits of its powers, to declare any act criminal and make the repetition or continuance thereof a public nuisance . . . or to vest in courts of equity the power to abate them by injunction; but it is not the province of the courts to ordain such jurisdiction for themselves." (See, *People* v. *Steele,* 4 Cal. App. (2d) 206, 213 [40 Pac. (2d) 959, 41 Pac. (2d) 946]; 16 Harv. L. Rev. 389, 403.)

■  In addition to the historical precedents which we have considered, compelling reasons of policy require that the responsibility for establishing those standards of public morality, the violations of which are to constitute public nuisances within equity's jurisdiction, should be left with

the legislature. "Nuisance" is a term which does not have a fixed content either at common law or at the present time. (McClintock, *supra*, p. 288; 13 Cal. L. Rev. 63; 23 Cal. L. Rev. 428; 16 Harv. L. Rev. 389, 396.) Blackstone defined it so broadly as to include almost all types of actionable wrong, that is, "any thing that worketh hurt, inconvenience or damage." (2 Cooley's Blackstone (4th ed. 1899), p. 1012.) We have already referred to those modern definitions which seek to make of equity an additional remedy for the enforcement of the criminal law by defining "public nuisance" for the purposes of an injunction as any repeated and continuous violation of the law. (5 Pomeroy, *supra*, p. 4296.) In a field where the meaning of terms is so vague and uncertain it is a proper function of the legislature to define those breaches of public policy which are to be considered public nuisances within the control of equity. Activity which in one period constitutes a public nuisance, such as the sale of liquor or the holding of prize fights, might not be objectionable in another. Such declarations of policy should be left for the legislature. (See, Chaffee, *supra*, p. 336, et seq.; 8 Ill. L. Rev. 19, 36; 73 U. of Pa. L. Rev. 185, 189.)

█ Conduct against which injunctions are sought in behalf of the public is frequently criminal in nature. While this alone will not prevent the intervention of equity where a clear case justifying equitable relief is present (*Perrin* v. *Mountain View Mausoleum Assn.*, 206 Cal. 669, 671 [275 Pac. 787]; *People* v. *Steele, supra; People* v. *Seccombe, supra*, p. 312), it is apparent that the equitable remedy has the collateral effect of depriving a defendant of the jury trial to which he would be entitled in a criminal prosecution for violating exactly the same standards of public policy. (See *State* v. *Vaughn, supra*, p. 690; 5 Pomeroy, *supra*, p. 4299.) The defendant also loses the protection of the higher burden of proof required in criminal prosecutions and, after imprisonment and fine for violation of the equity injunction, may be subjected under the criminal law to similar punishment for the same acts. For these reasons equity is loath to interfere where the standards of public policy can be enforced by resort to the criminal law, and in the absence of a legislative declaration to that effect, the courts should not broaden the field in which injunctions against criminal activity will be granted. █ Thus, for the reasons set forth, the basis

for an action such as this must be found in our statutes rather than by reference to the common law definitions of public nuisance.

The trial court sustained both general and special demurrers to the complaint in the present case. In support of the court's ruling on the general demurrer, defendants argue that the allegations of the complaint are insufficient because no facts are alleged from which the court could conclude that a nuisance existed under the provisions of Civil Code, sections 3479, 3480, and Code of Civil Procedure, section 731. It is contended that the allegations of the complaint present merely conclusions of the pleader, framed in the language of the statute.

It is undoubtedly true, as suggested by defendants, that where an attempt is made to enjoin particular activity upon the theory that it constitutes a nuisance under general statutory provisions, sufficient facts must be alleged so that the court may conclude that a nuisance exists within the provisions of the statute. (*People* v. *Seccombe,* 103 Cal. App. 306, 310 [284 Pac. 725]; *People* v. *Steele,* 4 Cal. App. (2d) 206, 212 [40 Pac. (2d) 959, 41 Pac. (2d) 946]; *State* v. *Johnson,* 26 N. M. 20 [188 Pac. 1109]; 46 C. J. 784.) The principle which applies in such cases is clearly illustrated by comparing with *State* v. *Johnson, supra,* a recent case from the same jurisdiction, *State* v. *Compere,* 44 N. M. 414 [103 Pac. (2d) 273]. In the earlier case, which was relied upon by the California court in *People* v. *Seccombe, supra,* the court held insufficient a bare allegation that the practice of medicine without a license was injurious to the health and thus an enjoinable public nuisance. The allegation that the illegal practice of medicine was injurious to the health was said to be a mere conclusion of the pleader and was held not to present facts from which the court could conclude that a public nuisance existed. In *State* v. *Compere, supra,* the complaint alleged that the defendant, in addition to being unlicensed, was unskillful and uninformed and that because of his lack of skill the continued practice of medicine by him constituted a danger to the health and lives of the public. The court held, though adhering to the rule set forth in *State* v. *Johnson, supra,* that this complaint was sufficient because particular facts were presented from which the existence of a public nuisance could be deduced. Nor is this rule altered by virtue

of the fact that there are certain exceptional situations where, because of the difficulty in pleading the specific facts of the case, the courts have sanctioned general allegations without requiring a statement of the particular facts, as in an equity action under special statute to enjoin as nuisances houses where liquor is sold illegally (*People* v. *Burkett,* 75 Cal. App. 349 [242 Pac. 1073]; *Hammond* v. *McDonald,* 32 Cal. App. (2d) 187 [89 Pac. (2d) 407], or houses maintained for purposes of prostitution, assignation or lewdness. (*People* v. *Laine,* 41 Cal. App. 345 [182 Pac. 986]; *People* v. *Arcega,* 49 Cal. App. 239, 241 [193 Pac. 264]; *People* v. *Bayside Land Co.,* 48 Cal. App. 257 [191 Pac. 994].) In such actions to enjoin nuisances under special statutory authority the legislature has specified the particular activity which is sought to be enjoined and a general allegation cannot mislead the defendant as to the nature of the case which he is called upon to answer. (See *People* v. *Arcega, supra,* p. 242.)

Although the defendants' contention that particular allegations of fact are required is therefore correct, we think that the allegations of the present complaint are adequate as against a general demurrer. The complaint alleges that the gambling house operated by defendants ''draws together great numbers of disorderly persons, disturbs the public peace, brings together idle persons and cultivates dissolute habits among them, creates traffic and fire hazards, and is thereby injurious to health, indecent and offensive to the senses and impairs the free enjoyment of life and property.'' Crowds of disorderly people who disturb the peace and obstruct the traffic may well impair the free enjoyment of life and property and give rise to the hazards designated in the statute. In cases of a similar nature, pleadings which are not essentially different from the one here involved have been held to state facts sufficient to constitute a cause of action. (*People* v. *Truckee Lumber Co.,* 116 Cal. 397 [48 Pac. 374]; *People* v. *Wing,* 147 Cal. 379 [81 Pac. 1103]; *Weis* v. *Superior Court, supra.*) It follows that the trial court was in error in sustaining the general demurrer.

The trial court also erred in upholding the special demurrer. Such a demurrer should not be sustained where the allegations of the complaint are sufficiently clear to apprise the defendant of the issues which he is to meet. (*Jacobson* v. *Oakland Meat & Packing Co.,* 161 Cal. 425, 433

[119 Pac. 653, Ann. Cas. 1913B, 1194] ; *Jones* v. *Iverson,* 131 Cal. 101, 104 [63 Pac. 135] ; *Hurwitz* v. *Gross,* 5 Cal. App. 614, 617 [91 Pac. 109] ; 21 Cal. Jur. 102.) A special demurrer for uncertainty is not intended to reach the failure to incorporate sufficient facts in the pleading, but is directed at the uncertainty existing in the allegations actually made. (*Callahan* v. *Broderick,* 124 Cal. 80, 83 [56 Pac. 782] ; *Brea* v. *McGlashan,* 3 Cal. App. (2d) 454 [39 Pac. (2d) 877] ; *Smith* v. *Hollander,* 85 Cal. App. 535, 542 [259 Pac. 958] ; *Butler* v. *Wyman,* 128 Cal. App. 736, 740 [18 Pac. (2d) 354].) While it may be true that the allegations of this complaint do not present a complete picture of the factual situation surrounding the operation of defendants' gambling house, the facts upon which the plaintiff relies are stated with sufficient clarity. The allegations are neither uncertain, ambiguous nor unintelligible. Although the complaint should not be taken as a model of good pleading, it is sufficient as against both the general and special demurrers.

The judgment is reversed.

Shenk, J., Edmonds, J., Carter, J., and Traynor, J., concurred.

Appellant's petition for rehearing was denied November 27, 1941. Carter, J., did not participate therein.